# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 31

OCTOBER TERM, A.D. 2016

March 14, 2017

LOUISE J. GALIHER, Trustee of the
Louise J. Galiher Trust,

Appellant
(Plaintiff),

v.                                                                S-16-0188

DENNIS and VICKI JOHNSON,

Appellees
(Defendants).

*Appeal from the District Court of Teton County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
> Anna Reeves Olson, Park Street Law Office, Casper, Wyoming

*Representing Appellee:*
> Matthew E. Turner, Mullikin, Larson & Swift LLC, Jackson, Wyoming

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, **Justice.**

[¶1]    Louise Galiher appeals from a judgment ruling that title to a portion of her property[1] had vested in her neighbor Dennis Johnson and his wife by adverse possession. We reverse and remand.

## ISSUES

[¶2]    Galiher asserts that the district court erred as a matter of law in three respects:  (1) in concluding that the Johnsons had established a *prima facie* case of adverse possession, despite their inability to show that their use of the disputed property was hostile and under a claim of right; (2) in calculating when the statute of limitations began to run to bar claims against the Johnsons' use of the property; and (3) in refusing to consider evidence that previous owners of Galiher's property were simply accommodating a neighbor when they allowed the Johnsons to park on the disputed property.

[¶3]    However, at the core of each of those assertions, as presented in both Galiher's opening and reply briefs, is a single question of law that in our view is determinative of this case:

> Did the district court err when it determined it could not
> consider Johnson's out-of-court statements as evidence that
> his use of the disputed property had always been permissive?

## FACTS

[¶4]    The parties' dispute relates to Lot 21 and Lot 23 of the High Country subdivision in Teton County near the town of Jackson, Wyoming.  In 1977, Johnson's wife Vicki and her former husband, Rick Hollingsworth, purchased a home situated on Lot 21.  The couple divorced in 1984.  Johnson met his wife in 1985 and married her the following year.  In 1990, Hollingsworth conveyed his interest in the property to the Johnsons, who have continued to live there.

[¶5]    Lot 23 is directly south of Lot 21.  Between 1978 and Galiher's purchase in early March of 2013, the ownership of Lot 23 had changed eight times. The following map shows the two lots and the disputed portion of Lot 23.

---

[1] Galiher obtained the property in her capacity as trustee of the Louise J. Galiher Trust and has litigated this property dispute in that capacity.  The disputed area covers 1,208 square feet.

1



The following photo, which was not an actual exhibit presented at trial but rather an enlarged photo of a portion of Appellant's Exhibit D-38, is an aerial view of the lots and disputed property. The markings on the photo were placed there by Appellant's counsel.



[¶6]    On April 15, 2013, Galiher received the report of a survey she had commissioned and set out to examine the boundaries of Lot 23.  In the extreme northwestern corner of her property she discovered what appeared to be a scattering of junk covered in part by weeds that were three feet high, as well as evidence of vehicles parking on her property.  She then phoned the county planning and development office about the process she would have to pursue to have the junk removed.  That inquiry led Jennifer Anderson, the planning office's code compliance officer, to send a letter to Johnson about the issue on April 22, 2013.  Sometime after discussing the matter with Anderson, and telling her that prior owners had given him permission to use that corner of Lot 23, Johnson telephoned Galiher.

[¶7]    Johnson also informed Galiher that previous owners of Lot 23 had given his family permission to use that corner of her property for parking for a number of years, and he asked for her permission to continue that use.  He promised he would maintain it in a manner that was acceptable to her.  Galiher denied him permission, but granted his request for forty-eight hours to remove his things.  When Johnson then asked if guests could use it for overflow parking on those limited occasions when he was hosting a party, she told him she would have to think about it.

[¶8]    A week or more later,[2] Johnson called Galiher a second time and told her he was not going to remove his things from her property, and that he would continue to use it as he had been because he felt he had a right to be there.  He did not tell her what prompted him to change his mind.

[¶9]    On May 11, 2013, Galiher saw that Johnson was still occupying her property, asked her friend Mary Martin to drive out to serve as a witness, and requested that a deputy sheriff be sent to the scene.  While Galiher spoke to the deputy, Martin recognized Johnson as an old acquaintance from days when they both worked as department heads for Teton County.  Consequently, she went to speak with him.

[¶10]  When Martin asked what he was doing, Johnson replied that he was getting his "stuff cleaned off this property" because his neighbor was upset.  He also informed Martin that previous owners of the property had given him permission to use this small corner of it, and that he was really upset the new owner was not being similarly neighborly.

[¶11]  On May 24, 2013, Galiher sued to quiet title to Lot 23, alleging that the Johnsons' use of the disputed portion of her property had been permissive.  The Johnsons filed an answer and counterclaim seeking to quiet title to the disputed parcel based upon adverse

_____

[2] The record is unclear in this regard.  Johnson testified that the second call took place about a week after the first, but he also testified that the second followed a visit from a sheriff's deputy.  The record reveals only one such visit, and it occurred on May 11, 2013.  Johnson conceded that he may have told a visiting deputy that he had been given permission to use the disputed property by previous owners of Lot 23.

possession on July 16. On June 20, 2014, they filed a motion for a summary judgment, which the district court denied on December 1, 2014. The court concluded that contested issues of material fact existed with respect to whether Johnsons' use of the disputed property was sufficiently open, notorious, exclusive, and hostile, and whether use of the property was permissive. A bench trial was thereafter held on July 28, 2015.

[¶12] At the trial, Hollingsworth testified that when he and his then wife purchased the house on Lot 21, there were two retaining walls, the southern ends of which later were found to intrude slightly onto Lot 23. After two to three years of living there, he converted the garage on the southern end of the house into a family room and built a new garage and driveway on the northern end of the home. He believed that from that time until his divorce his family parked exclusively in the new garage and driveway. However, on occasions when they hosted numerous guests, some would park in the disputed area when the old driveway was full.

[¶13] Johnson testified that use of the disputed area increased somewhat after he married Hollingsworth's ex-wife. Each of them had a private vehicle and an employer-provided work vehicle. During winters, the slope of the northern driveway sometimes made it impractical to park there, so vehicles that could not be stored in the garage were parked in the disputed area. Their parking needs increased after 1988 due first to their children reaching driving age, and later to the Johnsons' decision to take in renters after the children moved out, as well as the periodic return of some of the children and their families to live in the home.

[¶14] Johnson also testified that he placed other items on the disputed property to the east of the area used for parking. He kept construction materials there during remodeling work from 2000 to 2003, and he parked a pop-up camper there for five years. During the remodeling, he moved a small portable shed that he previously kept close to his house onto the disputed area, and he placed a short portable wooden boardwalk there. Neither of those items was secured to the ground. The following photograph shows the parking area and the shed.



[¶15] Until Galiher had her property surveyed and her property lines marked, Johnson did not know where Lot 21 ended and Lot 23 began, and he thought that her predecessors in interest permitted his use of the disputed area out of a sense of reasonable neighborly accommodation.[3] He recognized all along that his various neighbors owned much of the land he was using for parking, and until his first conversation with Galiher, he had taken no steps to assert his own ownership over any part of Lot 23.

[¶16] On March 17, 2016, the district court issued its decision, in which it concluded the Johnsons had proven their adverse possession claim. The court identified the central question to be whether, in light of Johnson's satisfaction of his burden of producing evidence indicative of adverse possession, Galiher sufficiently rebutted that proof with evidence that Johnson's use of the disputed property was permissive or otherwise not hostile to Galiher's ownership.[4]

[¶17] Paragraph 9 in the "Findings and Conclusions" portion of the district court's decision recites:

> Defendants' subjective intent or any other property owner's subjective intent is irrelevant in proving or disproving adverse possession. As such, the Court will only rely on the admissible objective evidence and testimony presented at trial in considering Defendants' intent to establish adverse possession.

The court found that between 1977 and 1984, and between 1986 and 2013, neither the Hollingsworths nor the Johnsons asked for or received permission from any owner of Lot 23 to use the disputed property. Finding that Galiher had not shown by admissible evidence that such use was permissive or a neighborly accommodation, the court determined the Johnsons had adversely possessed the property since 1986 and therefore acquired title to it in 1996.

[¶18] The district court's judgment to that effect issued on May 3, 2016, and Galiher timely perfected her appeal from that judgment.

---

[3] One of those predecessors, Hazen Hatfield, confirmed that this was in fact his attitude towards Johnson's use of the disputed area. He owned Lot 23 from 2001 to 2012, and believed all along that he was simply being a good neighbor by allowing the Johnsons the convenience of parking in that area.

[4] Given the nature of this question and the fact, discussed below, that we defer to the trial court's resolution of factual issues, we will not address the court's evaluation of Johnson's evidence in any great detail. Instead, we will focus on matters that affected its consideration of Galiher's response.

**DISCUSSION**

[¶19] When this Court reviews a decision of the district court following a bench trial, we do not limit ourselves to the extent we would in reviewing a jury verdict. We may examine all the properly admissible evidence in the record, giving due regard to the district court's opportunity to assess matters of credibility. We do not reweigh disputed evidence or set aside findings of fact unless they are clearly erroneous; that is, unless this Court's examination of all the evidence leaves us with the definite and firm conviction that a mistake has been made. The district court's application of the law is reviewed *de novo*. *Graybill v. Lampman*, 2014 WY 100, ¶ 25, 332 P.3d 511, 519 (Wyo. 2014); *Shores v. Lindsey*, 591 P.2d 895, 899-900 (Wyo. 1979).

[¶20] One claiming that he has adversely possessed the land of another for the ten-year period set out in Wyo. Stat. Ann. § 1-3-103 (LexisNexis 2015) must show that his use of the land was actual, open, notorious, exclusive, and continuous, and that it was hostile and pursuant to a claim of right or color of title. *Hillard v. Marshall,* 888 P.2d 1255, 1258 (Wyo. 1995); *Turner v. Floyd C. Reno & Sons, Inc.,* 769 P.2d 364, 368 (Wyo. 1989). A hostile possession or use is one that amounts to an assertion of ownership adverse to that of the record owner. It must be so incompatible with or so in defiance of the rights of the true owner that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant *intends* to possess the property as his own, and that the owner should take some action to protect his title. *Graybill*, ¶ 36, 332 P.3d at 522.

[¶21] Because the requirement of notice is fundamental to a claim of adverse possession, we have held that a claimant cannot establish a *prima facie* case by relying solely on his testimony as to his subjective hostile intent. He must introduce evidence that such intent was objectively made manifest by his observable words or actions. *Braunstein v. Robinson Family Ltd. Partnership, LLP,* 2010 WY 26, ¶ 19, 226 P.3d 826, 835 (Wyo. 2010); *Turner*, 769 P.2d at 368. Once the adverse claimant establishes a *prima facie* case, the burden shifts to the owner to present evidence rebutting that claim. *Hillard*, 888 P.2d at 1259.

[¶22] One means of accomplishing that end is to introduce proof that the claimant's use or possession of the disputed land was permissive. No manner, duration, or scope of use can be adverse if the owner permitted it. *Graybill*, ¶ 27, 332 P.3d at 519-20; *Hillard*, 888 P.2d at 1259. This Court opined nearly forty years ago that when a landowner allows a neighbor to use his land, that use should be deemed permissive. As we noted then, the law will not permit "that common neighborliness may only be indulged under penalty of encumbering one's property." *Gray v. Fitzhugh*, 576 P.2d 88, 90-91 (Wyo. 1978). One treatise has expressed that same view, noting that "property owners characteristically allow slight intrusions onto their land by their neighbors in order to promote good will and avoid bad feelings and confrontations," and that such a "neighbor generally does not

intend to adversely possess . . . and thereby acquire title to that land." James C. Smith, *Neighboring Property Owner* § 6:1 (November 2016 update).

[¶23] For the most part, we take no issue with the district court's application of these principles. However, one ruling is fatally flawed. As noted above, the court concluded that none of Johnson's statements of his subjective intent were relevant to either prove or disprove adverse possession, and that consequently the court could not consider those statements in deciding the issues before it. Our decisions do not support that ruling.

[¶24] We have no doubt that the district court derived its view from our oft- repeated position that one seeking to establish a *prima facie* case of adverse possession cannot rely solely on his testimony about his subjective intent. Instead, he must introduce evidence that such intent manifested itself in objectively observable actions or words sufficient to notify the record title holder of that intent. That is a far cry, however, from saying that none of the claimant's statements of subjective intent are relevant.

[¶25] Statements like Mr. Johnson made out of court, particularly if made to the owner of the disputed property or members of the community, can be evidence every bit as objective and relevant as the nonverbal act of erecting a banner of conquest on the neighbor's land. Moreover, we have frequently held that a claimant's out-of-court statements that his possession or use of another's property was permissive may be considered as evidence that he lacked the requisite hostile and adverse intent.

[¶26] We noted long ago that although a claimant's intent and the character of his possession of another's land may often be ascertained better by his physical actions in relation to that land, his verbal actions—his words—in relation to the land should also be considered in evaluating the nature of the possession involved. *Shores*, 591 P.2d at 901. Thus, we found it significant to those issues that, during a conversation with the owner about a piece of property, the claimant left the impression that he recognized the owner's rights in the land. *Rutar Farms & Livestock, Inc. v. Fuss*, 651 P.2d 1129, 1135 (Wyo. 1982). *See also* 4 *Tiffany Real Property* § 1142 (3d ed. September 2016 update) (express or inferable recognition of title in the true owner will defeat assertion that property of another was possessed with adverse and hostile intent); § 1147 (claimant not in adverse possession if he acknowledges to owner or third person that title resides with the owner, or he disclaims title in himself to such persons).

[¶27] We have also observed that a claimant's conduct after he allegedly acquired adverse title to land is relevant to establish his intent during the period of his alleged adverse possession. *Miller v. Stovall*, 717 P.2d 798, 805-06 (Wyo. 1986), *overruled on other grounds by Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287 (Wyo. 1991). Consequently, we held that his statements indicating that his use of disputed property was consensual should be understood to reach back to the time when the use commenced. *Id.* This is so because the doctrine of adverse possession was never intended to permit the

acquisition of title to another's land when use has been permissive. *Turner*, 769 P.2d at 369.

[¶28] Before this case began, and apparently before Johnson's second telephone call to Galiher, he told four people that Galiher's predecessors in interest to the disputed property had given his family permission to use it as they had been. Even at trial, after the battle lines were clearly drawn, Mr. Johnson testified that he never intended to take property away from Appellant's predecessors in interest.

[¶29] Our case law indicates that those statements were highly pertinent to the questions of whether Johnson's use of the disputed property was permissive all along, and whether he ever used or possessed that property with the requisite adverse and hostile intent. The use a party makes of disputed property may, as in this case, be as consistent with permissive use as with hostile use under a claim of right. Thus the test can look to evidence that is both subjective (what was the adverse claimant's intent – for example, was there permission to use the land), and objective (was the use sufficient to hoist a flag of hostile intent). Although Mr. Johnson's intent perhaps arguably became hostile in 2012, not enough time elapsed after that before Ms. Galiher filed suit to satisfy the required statutory period of ten years. Wyo. Stat. Ann. § 1-3-103.

[¶30] The district court deemed the statements Mr. Johnson made irrelevant and refused to consider them. We find it probable that this error of law effectively predetermined the case against Galiher. We choose to reverse and remand, rather than to reverse outright, so that the district court may consider the statements together with the other testimony and evidence in the record. For one thing, the history of the two retaining walls, which were permanent modifications to the disputed parcel, is shrouded in mystery. Even if the court determines on remand that the use Mr. Johnson made of the property was not adverse, those walls may fall into a different category.

## CONCLUSION

[¶31] Because we have found prejudicial error as to a matter of law, we reverse the judgment of the district court and remand for reconsideration in light of this opinion.