# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 49

**APRIL TERM, A.D. 2017**

**May 8, 2017**

RICHARD OSUCH and BARBARA D. RIVERA,

Appellants
(Plaintiffs),

v.

S-16-0228

DAVID E. GUNNELS and LINDA M. GUNNELS,

Appellees
(Defendants).

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellants:*
    Michael W. Stulken, Stulken & Tynsky, PC, Green River, Wyoming.

*Representing Appellees:*
    Danielle M. Mathey and Richard Mathey, Mathey Law Office, PC, Green River, Wyoming. Argument by Ms. Mathey.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   This case involves a dispute between property owners in Sweetwater County regarding a mistaken property boundary. Appellants, Richard Osuch and Barbara Rivera, challenge the district court's ruling that title to a portion of property formerly owned by their predecessors in interest had vested in Appellees, David and Linda Gunnels, by adverse possession. We affirm.

## *ISSUES*

[¶2]   Appellants present the following issue:

> Whether the district court erred in concluding that the Gunnels acquired title to the subject property by adverse possession.

Appellees present an additional issue:

> Whether Appellees should be awarded attorney's fees and costs under W.R.A.P 10.05.

## *FACTS*

[¶3]   In 1974, Appellants' parents, Stanley and Wladzia Osuch, acquired an 80-acre tract of land in Sweetwater County. They eventually put the land into a trust, and the property passed to Appellants after Mrs. Osuch's death in 2010. In 2011, Appellants recorded a quitclaim deed conveying the property to them as tenants in common.

[¶4]   In 1984, Appellees purchased a forty-acre tract adjacent to the property owned by Appellants' predecessors in interest. At the time of the purchase, Appellees moved into an existing home on the property. Appellees subsequently made extensive improvements. In the spring of 1985, they constructed a fence around the property. Appellees determined the location of the fence based on stakes that were represented by their realtor to mark the property boundary. Unbeknown to Appellees, the fenced area, which included the existing home, encompassed approximately eight acres of the Osuch's property, which is the subject of this appeal.

[¶5]   Beginning in 1985, Appellees made improvements to the house. They added several bedrooms, a front porch, a sun room, a basement, a brick fireplace, and hardwood floors. In 1993, Appellees added a barn to the property. They also planted approximately 200 trees and shrubs and let their animals range over the entire property. Appellees lived continuously in the home on the property from 1985 to 2005 while they raised their two children. In 2005, they began spending part of their time in Hawaii, but

1

maintained their residence on the property for nine months out of the year.

[¶6]   Soon after Appellants acquired the property, they attempted to sell it but were unable to close a deal because of the existence of Appellees' home within the recorded boundary of the property.  In February 2012, Appellants notified Appellees of the mistaken boundary and indicated their willingness to sell the property to Appellees.  The parties initially reached an agreement for the sale of Appellants' entire parcel to Appellees for $20,000, but they were unable to close the sale.  They subsequently discussed the possibility of a sale of only the disputed portion of the property but were ultimately unable to reach an agreement.

[¶7]   After negotiations to purchase the disputed property failed, Appellants filed an action to quiet title to the property.  Appellees responded with counterclaims for promissory estoppel and adverse possession, among others.  Appellees asserted that Appellants had entered into an agreement to sell them their entire parcel.  Alternatively, Appellees claimed they had acquired title to the disputed property by adverse possession.  Appellees also claimed a right to an implied easement across Appellants' property for access to their property.

[¶8]   After a bench trial, the district court found that Appellees had established all of the elements of adverse possession.  The court also found that Appellees had an implied easement to access their property.  Because the court found that Appellees had acquired the property by adverse possession, the court denied their promissory estoppel claim. Appellants timely filed this appeal.

## STANDARD OF REVIEW

[¶9]   The following standards guide our review of a district court's decision following a bench trial:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of the prevailing party below is true and give that

2

party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed *de novo.*

*Graybill v. Lampman*, 2014 WY 100, ¶ 25, 332 P.3d 511, 519 (Wyo. 2014) (quoting *Helm v. Clark*, 2010 WY 168, ¶ 6, 244 P.3d 1052, 1056 (Wyo. 2010) (citations omitted)).

## DISCUSSION

[¶10] In their only issue, Appellants claim the district court erred in finding that Appellees acquired title to the property in dispute by adverse possession. To establish adverse possession, Appellees must demonstrate actual, open, notorious, exclusive, and continuous possession of the disputed parcel which is hostile and under claim of right or color of title. *Graybill*, ¶ 27, 332 P.3d at 519.

A hostile possession or use is one that amounts to an assertion of ownership adverse to that of the record owner. It must be so incompatible with or so in defiance of the rights of the true owner that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant intends to possess the property as his own, and that the owner should take some action to protect his title.

*Galiher v. Johnson*, 2017 WY 31, ¶ 20, 391 P.3d 1101, 1106 (Wyo. 2017) (emphasis omitted). Possession must be for the statutory period of ten years. *Murdock v. Zier*, 2006 WY 80, ¶ 10, 137 P.3d 147, 150 (Wyo. 2006); Wyo. Stat. Ann. § 1-3-103 (LexisNexis 2013). The test for adverse possession imposes shifting burdens upon the parties:

When there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. However, if a claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession.

*Helm*, ¶ 8, 244 P.3d at 1057 (quoting *Cook v. Eddy*, 2008 WY 111, ¶ 7, 193 P.3d 705, 708 (Wyo. 2008)).

[¶11]   In this case, the evidence reveals that, when Appellees purchased their property in 1984, stakes had been set which they understood to mark the boundary of their property. In early 1985, Appellees used those stakes to construct a boundary fence which encompasses the eight acres at issue in this case.  At the time of Appellees' acquisition of the parcel, they moved into an existing home and used an existing well, both of which are located within the eight-acre parcel.  Appellees subsequently made many improvements to the home and the property.  They built an addition to the house as well as an attached garage, and landscaped the area around the home.  Over the next thirty years, they lived in the home and raised two children there.  They also let their animals graze on the property.

[¶12]   The undisputed evidence leaves no question that, beginning in 1985 and continuing for thirty years, Appellees used the disputed parcel openly, notoriously, exclusively, and in a manner plainly indicating that they were acting as the owners of the property.  This use was not permissive and was done under a claim of right.  Appellees satisfied all of the elements of adverse possession for the requisite statutory period. "Once all the elements of adverse possession are met, the possessor is vested with a fully new and distinct title."  *Murdock*, ¶ 17, 137 P.3d at 152.  Once vested, title "can only be divested by conveyance, descent or operation of law."  *Id.*, ¶ 19, 137 P.3d at 152 (quoting *Sanders v. Lidle*, 674 P.2d 1291, 1293 (Wyo. 1984)).

[¶13]   According to Appellants, the parties' conduct beginning in 2012, when Appellants learned that Appellees' dwelling was located within the recorded boundary of their property, demonstrates that Appellees did not intend to assert a right of possession during the period from 1985 to 1995.  Appellants point to Appellees' attempt to purchase the disputed property after Appellants claimed they were the rightful owners.  Appellants assert that "if [Appellees] had claimed the right to the disputed property, they would not have engaged in these activities to attempt to remedy the situation."  Appellants contend that this action was inconsistent with ownership and indicates that Appellees' possession was not "hostile."  We do not agree.

[¶14]   Appellants present no authority supporting their claim that an offer to purchase property previously acquired by adverse possession has any bearing on the intent of the adverse possessor during the statutory period.  Our precedent, however, contains authority to the contrary.  In *Meyer v. Ellis*, 411 P.2d 338 (Wyo. 1966), the plaintiff asserted a claim of adverse possession against his neighbors, the defendants, due to a mistaken boundary.  The plaintiff acquired the disputed property in 1960 from his grandfather, who at that time had satisfied the elements of adverse possession for a period of forty years.  *Id.*, 411 P.2d at 339, 342.  The defendants' predecessors in interest deeded their property to the defendants two months after the plaintiff acquired title from his grandfather.  *Id.*, 411 P.2d at 339.  Thereafter, the parties entered into a lease for a portion of the defendants' property and, at some point, the plaintiff offered to exchange parcels

4

with the defendants in an effort to resolve the dispute. The defendants claimed that plaintiff was estopped from asserting ownership of the disputed property based upon "a lease of the defendants' lands – purportedly including the disputed tract – by plaintiff on June 13, 1960," as well as the plaintiff's offer to exchange lands with the defendants. *Id.*, 411 P.2d at 341. This Court disagreed, concluding that plaintiff's "efforts to buy his peace," and his acknowledgment of the previous owner's title, did not serve to divest title acquired by adverse possession:

> Whatever plaintiff did on his own behalf could not affect the grandfather's title. The same is true of plaintiff's efforts to buy his peace through an exchange of lands with the defendant. While those matters have relevancy if occurring during the running of the statutory period as bearing upon the nature of the possession, it is the law that an acknowledgment of the title of a prior owner does not serve to divest a title previously acquired by adverse possession.

*Id.*, 411 P.2d at 341-42. As in *Meyer*, we conclude that Appellees' negotiations to purchase the disputed property in 2012 do not indicate a lack of intent to possess the property during the running of the statutory period.

[¶15] Appellants also contend that the conveyance of the property to them by their predecessors in interest divested Appellees of any claim they had to the property by adverse possession. Appellants rely on the rule that title obtained by adverse possession may be divested by "conveyance, descent or operation of law." *Murdock*, ¶ 19, 137 P.3d at 152. This statement of the law, however, has no relevance to the owner who has lost title by adverse possession. Appellants never acquired title to the disputed tract from their predecessors in interest because their predecessors no longer had title. *Meyer*, 411 P.2d at 345 ("[T]he portion of the judgment enjoining the defendants from interfering with the possession of the plaintiff was not erroneous and must be affirmed for the reason that defendants acquired no title to the disputed tract from their predecessor in interest."); *see also Crowden v. Grantland*, 510 So. 2d 238, 240 (Ala. 1987) ("Crowden could not have obtained title to the disputed property described in his deed because his grantors had no title that they could convey.") (citing *Graham v. Hawkins*, 281 Ala. 288, 202 So. 2d 74 (1967)). For the foregoing reasons, we find no error in the district court's determination that Appellees acquired title to the property in dispute by adverse possession.

[¶16] Appellees request that we impose sanctions in the form of attorney's fees against Appellants under W.R.A.P. 10.05(b) because there was no reasonable cause for this appeal. The rule provides, in relevant part, that "If the court certifies, whether in the opinion or upon motion, there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate

5

court and taxed as part of the costs in the case." In general, we are reluctant to order sanctions under Rule 10.05 and will do so only in rare circumstances. *Jackman Construction, Inc. v. Rock Springs Winnelson Co., Inc.*, 2016 WY 118, ¶ 39, 385 P.3d 311, 321 (Wyo. 2016); *Grynberg v. L & R Exploration Venture*, 2011 WY 134, ¶ 30, 261 P.3d 731, 739 (Wyo. 2011). While we do not find Appellants' arguments to be persuasive, we cannot certify that they had no reasonable cause for this appeal. Accordingly, Appellees' request for sanctions under Rule 10.05 is denied.

[¶17] Affirmed.