# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 5

OCTOBER TERM, A.D. 2020

January 11, 2021

JUDITH M. WOODWARD,

Appellant
(Defendant),

v.

S-20-0094

THOMAS J. VALVODA,

Appellee
(Plaintiff).

*Appeal from the District Court of Platte County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*

> *Judith M. Woodward, pro se.*

*Representing Appellee:*

> *Brian D. Artery, Sherard, Sherard, Artery & Johnson, Attorneys & Counselors at Law, Wheatland, Wyoming.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]   Thomas Valvoda and Judith Woodward are neighbors in Glendo, Wyoming. Mr. Valvoda's home is along the property line and several of his window wells encroach on Ms. Woodward's property.  He filed a claim to quiet title in the window wells based on adverse possession.  On cross-motions for summary judgment, the district court found for Mr. Valvoda, and Ms. Woodward appealed.  We affirm.

## *ISSUES*

[¶2]   We rephrase and consolidate the issues:

> I.      Did Ms. Woodward raise a genuine issue of material fact to dispute Mr. Valvoda's prima facie claim for adverse possession?
>
> II.     Did Ms. Woodward make a prima facie claim for adverse repossession?
>
> III.    Did the district court err by dismissing or not responding to Ms. Woodward's various other filings?

## *FACTS*

[¶3]   Mr. Valvoda purchased his residence at 104 North Yellowstone Highway, Glendo, Wyoming, in 1999.  Ms. Woodward acquired an interest in and began to reside at 108 North Yellowstone Highway in 2005.  The north wall of Mr. Valvoda's home is on the south border of Ms. Woodward's property.  The building has seven window wells, which are 42 inches wide, 18 inches deep, and extend 14-16 inches onto Ms. Woodward's property.

[¶4]   Mr. Valvoda purchased his property in 1999 from Susanne Clifton and her former husband, Joseph Tridle, who purchased the property in 1995 (the Tridles).  Ms. Clifton executed an affidavit stating the window wells were part of the Valvoda property while they owned it.  Ed Foster owned the property from 1975 to 1983, and his daughter, Jodie Foster, executed an affidavit stating she recalled window wells being present when she played in the basement of the building as a child.  The record does not reveal who owned the property from 1983 to 1995.  The Tridles did not conduct a survey or know the exact location of the northern property line.  Mr. Valvoda surveyed his property in 2002 and discovered the location of the property line, and that his window wells encroached on the property to the north.  He did not reveal the location of the property lines to his neighbor, or seek permission for or alter his use of the window wells.

[¶5]     Ms. Woodward has been the sole owner of her property since 2008.  From 2005 to 2008, Ms. Woodward owned her property as joint tenants with her daughter, Stefanie Holcomb, and her daughter's husband, Lawrence Holcomb.  Mr. Holcomb purchased the Woodward property in 1995 from Mae Pulver.  Mae Pulver and her late husband, Jim Pulver, (the Pulvers) purchased the Woodward property in 1967.  Ms. Pulver and Mr. Holcomb executed affidavits stating the window wells were present, visible to them, and used exclusively by owners of the Valvoda property from 1967 to 2008 without permission.

[¶6]     The parties' relationship was neighborly until August 2018, when Mr. Valvoda sent Ms. Woodward a letter, explaining that her sprinklers were causing damage to his home by spraying water directly onto his windows and walls, and asking her to water by hand along the property line.  Ms. Woodward responded with a letter demanding payment for his use of her property for the window wells.  A few months later, Ms. Woodward sent Mr. Valvoda a "Final Notice of Ejectment," warning him if he did not remove the window wells, she would hire someone to do so at his expense.

[¶7]     In late 2018, Mr. Valvoda filed a complaint in district court requesting declaratory judgment that he is the owner of the window wells by virtue of adverse possession,[1] a decree quieting title in his name, and a preliminary injunction preventing Ms. Woodward from removing the window wells or otherwise damaging his house.  Ms. Woodward filed a *pro se* motion to dismiss along with a supporting brief.  On the same day, the district court held a hearing on Mr. Valvoda's motion for a preliminary injunction, and granted it, enjoining Ms. Woodward from "removing, damaging, altering, tampering or interfering with [Mr. Valvoda's] residence, windows, window wells, [and] North sidewall . . . ."  The court also ordered Ms. Woodward to "refrain from applying an excessive amount of water to the property adjacent to [Mr. Valvoda's] residence, and . . . use the amount of water for irrigation that is reasonably necessary for maintenance of the vegetation."  Finally, it granted Mr. Valvoda temporary use of a two-foot strip of her property so that he could maintain the window wells and install temporary window well covers to mitigate the effects of Ms. Woodward's irrigation.

[¶8]     The subsequent procedural history is difficult to parse, however we identify these statements from Ms. Woodward's filings relevant to her knowledge of the window wells:

  - *January 14, 2019 Defendant's Motion to Dismiss*: "In 2008 [Ms. Woodward] . . . weeded inside the window wells . . . ."

---

[1] Mr. Valvoda's original claim was for a two-foot strip of land along his house.  Ms. Woodward also claimed his fence encroached on her property.  The only issue on appeal is the footprint of the windows.

- *January 14, 2019 Suggestions in Support of Defendant's Motion to Dismiss*: "Until 2018, . . . [Ms. Woodward] (and her predecessors) knew of the window wells and had no objections thereto."

- *January 24, 2019 Defendant's Objections to Plaintiff's Proposed [Preliminary Injunction]*: "The mere presence of the window wells does not establish the required showing of [adverse] possession. . . . [Ms. Woodward] . . . cared for the disputed land since 2005 . . . ."

- *February 25, 2019 Defendant's Request for Leave of Court to Amend Defendant's Motion to Dismiss and Suggestions in Support by Interlineation*: "On or about 2005, [Ms. Woodward] took possession of and improved said disputed property by planting grass, plants and flowers, as well as, weeded out the window wells of two feet high weeds."

- *February 25, 2019 Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss*: "In fact, as [Ms. Woodward] testified at the January 14th hearing . . . she has known of the window wells being on her property, since 2005 and did not object. She was just being a good neighbor. [Ms. Woodward] also testified that she has maintained and possessed the disputed property, including the window wells since 2005."

Finally, in April 2019, Ms. Woodward asserted for the first time, in the Second Affidavit of Judith M. Woodward,[2] that the window wells did not exist before 2009:

11. That I was ready to present at the January 14, 2019 hearing on my Motion To Dismiss my evidence showing that the window wells were created between June 5, 2009 and July 8, 2009 while I was out of town visiting friends in Seattle, Washington and when I returned I saw that Valvoda had taken my red bricks which were stacked along the south side of my house and used them to line some newly dug holes

---

[2] Ms. Woodward made this allegation in various other pleadings, however, her unsworn assertions are insufficient to support or contest facts for purposes of summary judgment. W.R.C.P. 56(c).

below six of his basement windows and without my permission to use or to take the red bricks.

[¶9] Eventually, the district court held a hearing on all pending motions. Citing W.R.C.P. 12(d), the district court found Ms. Woodward's motion to dismiss must be converted to one for summary judgment because the numerous affidavits that had accumulated by that time were "undoubtedly a 'matter outside' the pleadings."

[¶10] Mr. Valvoda responded with briefing, more affidavits, and his own motion for summary judgment. Ms. Woodward filed an answer and counterclaim to Mr. Valvoda's complaint and a reply to his response to her converted motion for summary judgment. Citing W.R.C.P. 15(a)(2), the district court dismissed her answer and counterclaim because she had not sought leave to amend her original pleadings.

[¶11] The district court found Mr. Valvoda met his burden of making a prima facie showing of adverse possession, and Ms. Woodward failed to show his possession was permissive or to assert a genuine issue of material fact existed, despite her claim the window wells were created in 2009. It concluded there was no dispute the window wells had existed since at least 1967, and Mr. Valvoda met his burden of showing he and his predecessors possessed them openly, notoriously, exclusively, hostilely, and under a claim of right from 1995 to 2005. The district court granted Mr. Valvoda's motion for summary judgment and denied Ms. Woodward's converted motion for summary judgment. Ms. Woodward then filed a Rule 60(b) motion to reconsider or vacate the judgment. One week later, Ms. Woodward appealed the district court's summary judgment order.

## STANDARD OF REVIEW

[¶12] We review decisions on summary judgment de novo, affording no deference to the district court's ruling. *Varela v. Goshen Cnty. Fairgrounds*, 2020 WY 124, ¶ 12, 472 P.3d 1047, 1052 (Wyo. 2020); *see also White v. Wheeler*, 2017 WY 146, ¶ 14, 406 P.3d 1241, 1246 (Wyo. 2017). The party moving for summary judgment bears the burden of establishing a prima facie case and showing "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *O'Hare v. Hulme*, 2020 WY 31, ¶ 16, 458 P.3d 1225, 1233 (Wyo. 2020); W.R.C.P. 56(a). If the movant meets his initial burden, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. *O'Hare*, 2020 WY 31, ¶ 16, 458 P.3d at 1233 (citing *Little Medicine Creek Ranch, Inc. v. D'Elia*, 2019 WY 103, ¶ 14, 450 P.3d 222, 227-28 (Wyo. 2019)). "A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties." *Varela*, 2020 WY 124, ¶ 12, 472 P.3d at 1052 (quoting *Kaufman v. Rural Health Dev., Inc.*, 2019 WY 62, ¶ 15, 442 P.3d 303, 308 (Wyo. 2019)). We "evaluate the record 'from the viewpoint most favorable to the party opposing the motion

for summary judgment, giving that party all the favorable inferences which may be drawn from the facts contained in affidavits, depositions, and other materials appearing in the record.'" *O'Hare*, 2020 WY 31, ¶ 16, 458 P.3d at 1233 (quoting *Murdock v. Zier*, 2006 WY 80, ¶ 9, 137 P.3d 147, 150 (Wyo. 2006)).

[¶13]  We review summary judgment claims for adverse possession with "more exacting scrutiny" because they "are inherently fact-intensive," viewing them in the same light, using the same materials, and following the same legal standards as the court below. *O'Hare*, 2020 WY 31, ¶¶ 16-17, 458 P.3d at 1233 (quoting *Little Medicine Creek*, 2019 WY 103, ¶ 15, 450 P.3d at 228).  We cannot consider materials submitted to the district court after it made its decision.  *O'Hare*, 2020 WY 31, ¶ 17, 458 P.3d at 1233 (citing *Toltec Watershed Imp. Dist. v. Johnston*, 717 P.2d 808, 812 (Wyo. 1986)).

## *DISCUSSION*

[¶14]  First, we consider whether Mr. Valvoda was entitled to summary judgment on his adverse possession claim, then whether Ms. Woodward was entitled to summary judgment on her claim for adverse repossession.  Next, we address Ms. Woodward's procedural concerns.

### I.  *Mr. Valvoda Was Entitled to Summary Judgment on His Adverse Possession Claim*

[¶15]  Adverse possession claims are disfavored in the law, and "a presumption in favor of the record title holder exists, unless and until the adverse claimant makes out his *prima facie* case." *O'Hare*, 2020 WY 31, ¶ 19, 458 P.3d at 1233 (quoting *White*, 2017 WY 146, ¶ 17, 406 P.3d at 1246).  The party requesting summary judgment on adverse possession "must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title.  Possession must be for the statutory period, ten years." *O'Hare*, 2020 WY 31, ¶ 19, 458 P.3d at 1233; Wyo. Stat. Ann. § 1-3-103 (LexisNexis 2019).  Once an adverse possession claimant makes a prima facie showing, the burden shifts to the opponent "to explain such possession." *O'Hare*, 2020 WY 31, ¶ 20, 458 P.3d at 1234 (quoting *White*, 2017 WY 146, ¶ 18, 406 P.3d at 1247 (quoting *Osuch v. Gunnels*, 2017 WY 49, ¶ 10, 393 P.3d 898, 901 (Wyo. 2017))).  If the record title holder can show possession was permissive, she has raised a genuine issue of material fact which precludes summary judgment.  *O'Hare*, 2020 WY 31, ¶ 20, 458 P.3d at 1234 (citing *Braunstein v. Robinson Fam. Ltd. P'ship LLP*, 2010 WY 26, ¶ 17, 226 P.3d 826, 833 (Wyo. 2010)).  Then the question becomes one of "weight and credibility to be determined by the trier of fact." *O'Hare*, 2020 WY 31, ¶ 20, 458 P.3d at 1234 (quoting *Braunstein*, 2010 WY 26, ¶ 17, 226 P.3d at 833).  Numerous periods potentially satisfy the statutory requirement of ten years, but for simplicity, we consider the period the district court used, 1995 to 2005, to determine each element of adverse possession.

5

## A. Actual Possession for the Statutory Period

### 1. Mr. Valvoda Made a Showing of Actual Possession

[¶16] "No particular act is required to establish actual possession; rather, the acts required depend upon the character of the land and the use that can reasonably be made of it." *Graybill v. Lampman*, 2014 WY 100, ¶ 28, 332 P.3d 511, 520 (Wyo. 2014). Mr. Valvoda demonstrates actual possession by the existence of the window wells. He submitted numerous affidavits from himself and four others to prove they existed from 1967 to the present.

[¶17] Ms. Woodward asks us to disregard several of the affidavits Mr. Valvoda submitted because she says they fail to describe the number, size, and location of the window wells; the district court failed to notice there are two buildings on Mr. Valvoda's property according to his 2002 survey; and the survey does not reveal any window wells.[3] Mr. Valvoda's survey does show two buildings on his property, only one of which is adjacent to the property line. But Mr. Holcomb clearly identified which building had window wells crossing the property line because, in his affidavit, he said "the property adjacent to and directly South of our property had window wells on the North side." Even if we disregard the remaining affidavits, this one is all Mr. Valvoda needs to establish the window wells were present from 1995 to 2005.

### 2. Ms. Woodward's Affidavits Do Not Create a Genuine Issue of Material Fact

[¶18] The district court held that Ms. Woodward did not create a genuine issue of material fact with her eleventh-hour contention the window wells were constructed in 2009, because the evidence "clearly shows that window wells were created prior to June 2009." In doing so, the district court necessarily rejected her affidavit testimony asserting the window wells were created in 2009.[4] "No genuine issue exists if the evidence presented in an opposing affidavit 'is of insufficient caliber or quantity to allow

---

[3] Ms. Woodward also encourages us to find Mr. Valvoda's credibility is questionable because she alleges he defrauded the district court by submitting falsified ("photoshopped") evidence and that he trespassed to get it. We cannot address her claim, because we do not consider claims raised for the first time on appeal. *Four B Properties, LLC v. Nature Conservancy*, 2020 WY 24, ¶ 69, 458 P.3d 832, 849 (Wyo. 2020).

[4] The district court also found her contention in direct conflict with all other affidavits in the case except for that of her son, William Radder, who stated that when he stayed at her home before her 2009 vacation, he "did not see any window well[s] attached to" Mr. Valvoda's house. The district court said it "would have to rely on speculation" to conclude Mr. Radder's statement foreclosed the existence of the window wells because multiple inferences could be drawn from it: "that he never looked for them, that he never noticed them, or that they did not exist at all." We agree and give no weight to Mr. Radder's affidavit.

a rational finder of fact' to find for the nonmoving party applying the applicable quantum of proof." *Scranton v. Woodhouse*, 2020 WY 63, ¶ 23, 463 P.3d 785, 791 (Wyo. 2020). Generally, "an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). However, if the "court determines that the conflict between the affidavit and the earlier testimony raises only a sham issue of fact, the court is free to disregard the contrary affidavit for summary judgment purposes." *Morris v. Smith*, 837 P.2d 679, 685 (Wyo. 1992) (citing *Franks*, 796 F.2d at 1237). The concern with sham affidavits is "that parties not thwart the purpose of Rule 56 by generating issues of fact through affidavits that contradict their own depositions." *Morris*, 837 P.2d at 685 (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364 (8th Cir. 1983)). In *Morris v. Smith*, this Court adopted the Tenth Circuit's *Franks* test to determine when a court may disregard a contradictory affidavit. 837 P.2d 679. The factors are: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* at 685.

[¶19]  Although the district court did not weigh the *Franks/Morris* factors in disregarding Ms. Woodward's affidavit, we do so now in our de novo review. First, although Ms. Woodward was not cross-examined, she repeatedly volunteered in her earlier filings that she knew the window wells existed before 2009. We find her multiple, voluntary admissions enough to satisfy the first factor. Second, the only evidence Ms. Woodward may have had to support her contention that the window wells were created between June 5, 2009 and July 8, 2009 was available to her at the time she made her original court filings, and was not newly discovered evidence. Third, her affidavit does not attempt to explain the confusion. She claims the contradiction arose because, when she read Mr. Valvoda's statement that he had maintained the window wells by replacing bricks, she suddenly remembered that they actually appeared in 2009 when she returned from vacation. We conclude this is a sham fact issue, created to defeat the ten-year statutory requirement for adverse possession, and the district court correctly disregarded it.

[¶20]  The statements of five affiants, two of whom were Ms. Woodward's predecessors in interest, establish the window wells existed from at least 1967. Disregarding her sham affidavit, and considering the evidence in the light most favorable to her, we find no disputed issue of material fact. The owners of the Valvoda property had actual possession of the window wells for more than the statutory period of ten years. Ms. Woodward's only argument against Mr. Valvoda's adverse possession claim is that he did not satisfy the time element. Though we conclude that her argument fails because it was a sham fact issue, we nevertheless analyze the remaining elements of Mr. Valvoda's claim under de novo review.

## B.   Open and Notorious

[¶21]   "The acts of dominion over land claimed to be adversely possessed must be so open and notorious as to put an ordinarily prudent owner on notice that the land is being used by another as his or her property."  *Graybill*, 2014 WY 100, ¶ 30, 332 P.3d at 520. The kind of act necessary to give notice depends on the type of land in dispute.  *Id.* Erecting a fence or enclosure may be enough to "raise the 'flag' of an adverse claimant," however, other acts may demonstrate possession is open and notorious.  *Davis v. Chadwick*, 2002 WY 157, ¶ 9, 55 P.3d 1267, 1270 (Wyo. 2002) (quoting *Meyer v. Ellis*, 411 P.2d 338, 343 (Wyo. 1966)).  Such acts include, but are not limited to, erecting buildings on the land, planting vegetation, maintaining and improving the property, watering and mowing, and using the land for family gatherings.  *Graybill*, 2014 WY 100, ¶¶ 30-32, 332 P.3d at 520-21; 3 Am. Jur. 2d *Adverse Possession* § 60, Westlaw (database updated November 2020).

[¶22]   A window well that extends over the property line is part of a building on another's land.  Mr. Valvoda's window wells were open and notorious; the owners of the Woodward property were on notice of Mr. Valvoda and his predecessors' continuing act of dominion.  The Pulvers and Mr. Holcomb stated they were aware of the window wells from 1967 to 1995, and 1995 to 2005, respectively, and they considered them part of the Valvoda property.  Ms. Woodward stated in several of her filings she was aware of the window wells as early as 2005.  She has not asserted a genuine issue of material fact to overcome Mr. Valvoda's showing that the window wells were open and notorious for the statutory period.

## C.   Exclusive Possession

[¶23]   "Exclusive possession requires that Appellants show an exclusive dominion over the disputed parcel and an appropriation of it to their own use and benefit."  *Graybill*, 2014 WY 100, ¶ 33, 332 P.3d at 521.  Adverse possession does not require absolute exclusivity but that which would be expected from an owner under the circumstances.  *Id*. A record owner's use or access of disputed property does not undermine exclusivity when the use or access is "nothing more than any neighboring land owner might do." *Cook v. Eddy*, 2008 WY 111, ¶ 25, 193 P.3d 705, 713 (Wyo. 2008) (record title owner's use of the property to maintain a fence does not defeat exclusivity); *Davis*, 2002 WY 157, ¶¶ 14-15, 55 P.3d at 1272-73 (town's seasonal removal of fence to permit public access to sledding hill did not negate the exclusiveness of claimants' possession).

[¶24]   The record supports a finding of exclusive possession for the statutory period. Mr. Valvoda and his predecessors used and possessed the window wells in a manner consistent "with that which would ordinarily be exercised by an owner in using land to the exclusion of others."  *Graybill*, 2014 WY 100, ¶ 34, 332 P.3d at 521. Ms. Woodward's predecessors in interest did not use the window wells to the benefit of

the Woodward property. The Tridles believed the window wells were part of their property and used them exclusively to benefit their property while they owned it between 1995 and 1999. Mr. Valvoda knew the window wells existed when he purchased the property in 1999 and continued to use them exclusively to benefit his home even after he discovered in his 2002 survey they were on the Woodward property. Ms. Woodward offers no facts to rebut Mr. Valvoda's showing of exclusivity for the statutory period we consider, 1995-2005.

## D. Continuous Possession for the Statutory Period

[¶25] "The term 'continuous' for purposes of adverse possession equates to possession for the statutorily required period, and that possession must be uninterrupted or maintained without break or interlude." *Graybill*, 2014 WY 100, ¶ 38, 332 P.3d at 522 (citing *Murdock*, 2006 WY 80, ¶¶ 11-13, 137 P.3d at 150-51). "Under the doctrine of 'tacking,' when there is privity between persons successively and continuously in possession holding adversely to the true title, the successive periods of occupation may be united to make up the time prescribed by statute." *Gillett v. White*, 2007 WY 44, ¶ 20, 153 P.3d 911, 916 (Wyo. 2007) (citing *Murdock*, 2006 WY 80, ¶ 14, 137 P.3d at 151). Because privity between the Tridles and Mr. Valvoda was not questioned, the district court held the Tridles' and Mr. Valvoda's periods of occupation could be united to find continuous possession from 1995 to 2005.

[¶26] Ms. Woodward argues the doctrine of tacking does not apply, because Mr. Valvoda has not provided evidence that the Tridles "occupied" the disputed property from 1995 to 1999. Further, she argues Mr. Valvoda has not met the continuous possession element because he stated at a hearing that he only lived in the house six months of the year. Ms. Woodward cites no authority for the proposition that this element requires an adverse claimant to have a constant physical presence on the disputed land. Even so, we are not concerned with the presence of a claimant himself, but with the presence of the activity that demonstrates possession. The window wells were continuously present for the statutory period, therefore Mr. Valvoda made a showing that he satisfied this element, and Ms. Woodward's arguments do not raise an issue of material fact with respect to it.

## E. Hostile and Under a Claim of Right

[¶27] Possession or use that is hostile and under a claim of right is an assertion of ownership so adverse to, incompatible with, and in defiance of, the rights of the true owner "that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant *intends* to possess the property as his own, and that the owner should take some action to protect his title." *Galiher v. Johnson*, 2017 WY 31, ¶ 20, 391 P.3d 1101, 1106 (Wyo. 2017) (emphasis in original) (citing *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522). Because the notice requirement is a fundamental part of an

adverse possession claim, "a claimant cannot establish a *prima facie* case by relying solely on his testimony as to his subjective hostile intent. He must introduce evidence that such intent was objectively made manifest by his observable words or actions." *O'Hare*, 2020 WY 31, ¶ 19, 458 P.3d at 1234 (quoting *Galiher*, 2017 WY 31, ¶ 21, 391 P.3d at 1106). Hostile intent does not mean intent to acquire ownership of another's property "akin to lining up Spartans at Thermopylae . . . rather, it is an assertion of ownership adverse to that of the record owner." *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522. A claim of ownership may arise by mistake or by will. *Id.*

[¶28] Ms. Woodward argues the district court incorrectly applied the law when it characterized the window wells as an "encroachment," and still found them hostile and under a claim of right. This Court said in *O'Hare*, "property owners characteristically allow slight intrusions onto their land by their neighbors in order to promote good will and avoid bad feelings and confrontations," and "encroaching neighbors generally [do] not intend to adversely possess that land and thereby acquire title to it." 2020 WY 31, ¶ 22, 458 P.3d at 1235 (alteration in original) (quotations and citations omitted). In *O'Hare*, we referenced these presumptions because the district court ignored them and "exceeded the bounds of summary judgment by making the factual finding" when the testimony was disputed. *Id.* at ¶¶ 22-24, 458 P.3d at 1235-36. We did not imply all encroachments are permissive. Mr. Valvoda's window wells are not a slight encroachment that permits neighborly sharing of the same land. We agree with the district court's finding that the "encroachment" was "undoubtedly hostile . . . . Window wells carved out of your neighbor's yard for the benefit of your property [are] an unmistakable assertion of a claim of ownership."

[¶29] Ms. Woodward argued below that even if the window wells had been created before 2009, she and her predecessors in interest gave "neighborliness permission" for them because they did not object to their presence. On appeal, she argues her predecessors in interest "had no objection to Valvoda[s] using their property because they were uncertain as to the exact location of the property lines." "Permission is an act of commission, not omission." *Galiher v. Johnson*, 2018 WY 145, ¶ 13, 432 P.3d 502, 510 (Wyo. 2018) (quoting *Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 823 (Pa. Super. 1998)). "[A property owner] cannot sit passively, knowing of the adverse use and, then, claim to have given permission implicitly to the adverse possessor by his failure to object." *Galiher*, 2018 WY 145, ¶ 13, 432 P.3d at 510 (alteration in original). The record shows no owner of the Valvoda property asked for or received permission from anyone to use the window wells. We cannot remedy this lack of evidence with an assumption that Ms. Woodward and her predecessors tacitly granted permission by their silence.

[¶30] Mr. Valvoda pled a prima facie claim of adverse possession of the window wells attached to his house, which Ms. Woodward failed to rebut with a genuine issue of material fact. The district court was correct to grant summary judgment in his favor.

## II.     The District Court Did Not Err in Denying Ms. Woodward's Motion for Summary Judgment

[¶31]  On cross-motions for summary judgment for adverse possession, we review the evidence "from the vantage point most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences that may fairly be drawn from the record." *Little Medicine Creek*, 2019 WY 103, ¶ 14, 450 P.3d at 228 (quoting *Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, ¶ 110, 437 P.3d 758, 795 (Wyo. 2019) (*Mantle I*)).  On appeal, Ms. Woodward argues that even if this Court finds Mr. Valvoda achieved title by adverse possession, she divested him of it by adverse repossession.

[¶32]  "Once real property is vested by adverse possession, title can only be divested by conveyance, descent or operation of law."  *Graybill*, 2014 WY 100, ¶ 40, 332 P.3d at 522.  Adverse repossession is an operation of law, and the elements are the same as adverse possession.  *Id.* at ¶ 40, 332 P.3d at 522-23.  Ms. Woodward attempted to show she satisfied each of the elements.  We need not consider each element because Ms. Woodward cannot show her possession was exclusive for any period.  Her sole argument for exclusivity is that she "paid the taxes and insurance on the area in dispute and constructed and maintained a fence to enclose the disputed area and posted on her fence a No-Trespassing Sign to exclude others, including . . . Valvoda from the disputed area as well as the rest of her property."  Non-payment of taxes by an adverse claimant is but one of several factors to be weighed.  *Braunstein*, 2010 WY 26, ¶ 18, 226 P.3d at 833-34.  Fencing her yard did not exclude the window wells.  She did attempt to eject Mr. Valvoda in late 2018, but that effort failed when the district court granted him limited access to maintain the window wells and enjoined her from removing them.  The district court correctly found Ms. Woodward did not meet her prima facie burden.  Mr. Valvoda therefore need not rebut her claim with a genuine issue of material fact, and the court correctly denied Ms. Woodward summary judgment.

## III.    The District Court Did Not Err by Dismissing or Refusing to Consider Ms. Woodward's Other Filings

[¶33]  Ms. Woodward raised three procedural issues.  First, she complains of a local rule requiring litigants to file "courtesy copies" with the judge as well as the clerk of district court.  Second, she contends the district court erred in "rejecting" the newly discovered evidence she submitted with a Rule 60(b) motion to reconsider or vacate the summary judgment order.  Finally, she complains the district court erred in dismissing her answer and counterclaim.

11

## A.       The "Courtesy Copy" Rule

[¶34]   Ms. Woodward claims she was deprived of her due process right to be heard because the district court imposed a local rule that required litigants to send a "courtesy copy" of all filings to the judge in addition to filing with the clerk of district court. Wyoming Rules of Civil Procedure permit filing with the clerk of court *or* the judge. W.R.C.P. 5(d)(2).  Rules that apply to a single court are prohibited.  W.R.C.P. 83(a)(2). If there is a local rule that requires filing with both, she is correct that it violates W.R.C.P. 83(a)(2).  However, there is no evidence of the alleged local rule in the record.  "When no transcript or any other proper substitute record of the facts of a case is included in the record on appeal, we presume that there were no irregularities in the district court's judgment."  *Jenkins v. Jenkins*, 2020 WY 120, ¶ 6, 472 P.3d 370, 373 (Wyo. 2020) (quoting *Roberts v. Locke*, 2013 WY 73, ¶ 27, 304 P.3d 116, 122 (Wyo. 2013)).[5] Further, nothing in the record suggests the application of a local rule prejudiced Ms. Woodward.  W.R.C.P. 83(b).  This Court considers the designated record on de novo review and uncovered no evidence to support her position.

## B.       New Evidence

[¶35]   One week before she appealed the district court's order granting Mr. Valvoda's motion for summary judgment, Ms. Woodward filed a Rule 60(b) motion to reconsider or vacate the judgment, citing evidence she discovered days after the order was issued.  She claims her new evidence proves Mr. Valvoda's window wells did not exist before 2009, and the district court abused its discretion by denying her motion.  Ms. Woodward's notice of appeal did not identify an order denying her Rule 60(b) motion, which it must for this Court to have jurisdiction over it.  W.R.A.P. 2.07(a)(2); 6.01(b).  Once this appeal was docketed, the district court had limited options regarding her motion, but it certainly had the option to deny it.  W.R.C.P. 62.1.[6]  Because the district court retained jurisdiction to deny Ms. Woodward's Rule 60(b) motion, the "deemed denied" clock continued to run and the motion was deemed denied July 14, 2020.  W.R.C.P. 6(c)(4); *Golden v. Guion*, 2016 WY 54, ¶ 16, 375 P.3d 719, 724 (Wyo. 2016) (applying "deemed denied" rule to appellant's Rule 60(b) motion).  Ms. Woodward then had thirty days to appeal the denial. W.R.A.P. 2.01(a).[7]   She did not appeal it, and we will not consider her argument regarding her Rule 60(b) motion.

---

[5] Ms. Woodward appended a transcript of a hearing to her brief.  We cannot review it because she failed to designate it as part of the record.  W.R.A.P. 3.05(b).  It is the appellant's responsibility to provide us with an adequate record. *Jenkins*, 2020 WY 120, ¶ 6, 472 P.3d at 373.

[6] In *Mantle v. North Star Energy & Constr. LLC*, 2019 WY 54, ¶¶ 14-15, 441 P.3d 841, 845-46 (Wyo. 2019), we held the district court lacked jurisdiction to grant appellant's post-trial motion because the same issue was under appeal at the time in *Mantle I*.  In contrast, Ms. Woodward's Rule 60 motion is deemed denied.

[7] "This allows a new appeal from the denial of the motion and often the appellate court can consider that

## C.    Answer and Counterclaim

[¶36]  After the district court converted Ms. Woodward's motion to dismiss to one for summary judgment, she filed an answer and counterclaim to Mr. Valvoda's complaint. The district court dismissed the filing, citing W.R.C.P. 15(a)(2), because she did not seek the court's leave to amend her previous pleading.  But what she filed was not an amended pleading, it was her first and only answer to Mr. Valvoda's complaint.  While she is correct that the district court erred by dismissing her answer and counterclaim, she was not prejudiced.  The district court does not consider answers when ruling on a summary judgment motion.  W.R.C.P. 56(c)(1).  Further, although captioned "counterclaim," the pleading appears to be no more than a continuation of an answer and asserts no claim.

## *CONCLUSION*

[¶37]  Mr. Valvoda made a prima facie claim for adverse possession of the disputed window wells, and Ms. Woodward failed to show a disputed issue of material fact, therefore the district court properly granted summary judgment in his favor. Ms. Woodward has not satisfied the elements of adverse possession.  We find no evidence the district court committed procedural errors that prejudiced her.  We affirm.

---

appeal together with the appeal from the original judgment."  11 Fed. Prac. & Proc. Civ. § 2873 (3d ed.), Westlaw (database updated October 2020); *Doctors' Co. v. Ins. Corp. of Am.*, 837 P.2d 685, 686 (Wyo. 1992).