# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 159

OCTOBER TERM, A.D. 2022

December 20, 2022

JOSEPH KUDAR, individually and as
Trustee of the Joseph H. Kudar Revocable
Trust under agreement dated June 13, 2003;
DOROTHY R. KUDAR, individually and
as Trustee of the Dorothy R. Kudar
Revocable Trust under agreement dated
June 13, 2003; MARY KAY HATTEN and
LYNN A. HATTEN,

Appellants
(Defendants),

v.                                                                    S-22-0041

LARRY J. MORGAN, individually and as
Trustee of the Larry J. Morgan Living
Revocable Trust dated November 30, 1998,

Appellee
(Plaintiff).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellants:*
    Matt Kim-Miller and Paula A. Fleck, Holland & Hart LLP, Jackson, Wyoming.
    Argument by Mr. Kim-Miller.

*Representing Appellee:*
    Mark D. Sullivan, Mark D. Sullivan, PC, Wilson, Wyoming. Argument by Mr.
    Sullivan.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]     Joseph and Dorothy Kudar (the Kudars) appeal from the district court's grant of summary judgment to Larry Morgan,[1] on his claim of adverse possession of one-tenth of an acre of the Kudars' property.  The Kudars claim the district court relied on contradictory evidence regarding Mr. Morgan's hostile use of the property and whether that use was sufficient to put them on notice of an adverse possession claim.  The Kudars also claim the district court misinterpreted evidence of permissive use under the doctrine of "neighborly accommodation."  They assert these errors preclude summary judgment.  We affirm.

### ISSUE

[¶2]     Did the district court err in finding there were no genuine issues of material fact calling Mr. Morgan's claim of adverse possession into question?

### FACTS

[¶3]     The parties have been neighbors for decades.  Mr. Morgan bought his lot in Teton County in 1990, and shortly thereafter built a home on Long View Lane.  The Kudars bought the adjoining lot and home in 1991.  Long View Lane is steep and twisted.  The houses along the lane sit at different elevations on heavily wooded lots.  The Kudars' lot includes a steep, wooded hill.  Their home and driveway are located at the bottom of its slope.  Mr. Morgan's property is higher along the hill, and the hill continues up past his lot.  Until 2016, neither the Kudars nor Mr. Morgan were certain as to the exact boundaries of their individual properties.

[¶4]     In 1990, Mr. Morgan constructed a dirt driveway from Long View Lane to an area near his house on relatively level terrain where he later built a garage.  It is undisputed that, from the outset, a portion of the driveway road was on the Kudars' property.  Mr. Morgan lined the edge of the driveway with railroad ties.  He later built a small garage at the end of the driveway, and to the north of the driveway, he constructed a greenhouse and established a garden.  Around 2001, he hauled in dirt and planted a line of spruce trees beyond the existing improvements.  He, again, used railroad ties to establish a border on the north edge of the trees.  By 2002 he had expanded, graveled, and blacktopped the driveway.  In 2015 or 2016, he built a deck behind the greenhouse.  All of these improvements encroached on the Kudars' property.

[¶5]     At his deposition, Mr. Morgan testified that when he first built the garage, he recalled Mr. Kudar "came up and asked [him] where our property line was."  Mr. Morgan told Mr. Kudar that he didn't know.  Nothing more was said.  Mr. Kudar does not remember having that conversation.

---

[1] All three parties sue on behalf of themselves or themselves as trustees of their individual revocable trusts.

1

[¶6]     Mr. Kudar attested that before the trees had been planted—some time before 2003—he was walking with another neighbor on his property when they discovered a metal survey marker.  Using the marker for reference, he eyeballed Mr. Morgan's improvements and determined they appeared to be on Mr. Morgan's side of the property line.  In 2016, Mr. Kudar confronted Mr. Morgan after he saw Mr. Morgan clearing brush.  Mr. Kudar believed the activity may have been occurring on his property.  He told Mr. Morgan to stop throwing the cuttings onto his property below the area where Mr. Morgan was clearing.

[¶7]     After this confrontation, Mr. Kudar called an engineering firm to survey the property.  The 2016 survey revealed that the marker Mr. Kudar had discovered prior to 2003 had apparently been moved and did not reflect the actual boundary between the properties.[2]  The survey revealed that all of Mr. Morgan's improvements—the driveway, garage, greenhouse, garden, and trees—encroached on the Kudars' property.

[¶8]     On learning this, Mr. Kudar called in a complaint to Teton County asserting that Mr. Morgan's garage structure and driveway were built outside Mr. Morgan's property line.  On August 30, 2016, a code compliance officer wrote to Mr. Morgan notifying him, among other things, that the driveway and garage were over his shared property line and would require an easement.  Mr. Kudar was told the area would be "red flag[ged]," which Mr. Kudar understood to mean there is a problem with the property and no further construction or building could take place until the problem was resolved.  In response, Mr. Morgan removed the deck and disassembled the greenhouse.

[¶9]     After the 2016 complaint, Mr. Morgan and Mr. Kudar had several discussions where Mr. Morgan offered to buy title or an easement for the continued use of the disputed property.  Mr. Kudar rejected all offers.  Negotiations ended when, in the fall of 2020, Mr. Kudar placed fence posts in the blacktopped driveway along the newly surveyed property line.  The fence posts prevented Mr. Morgan's use of the driveway.  When Mr. Morgan discovered the posts, he "gave up trying to buy the dirt" and obtained his own survey.  The Kudars had the property resurveyed to confirm the boundaries.

[¶10]   Mr. Morgan filed a Complaint requesting a declaratory judgment quieting title of the disputed land to Mr. Morgan based on adverse possession.  He later filed a Motion for Summary Judgment, and the Kudars filed a cross Motion for Summary Judgment.  The district court granted summary judgment in favor of Mr. Morgan on December 28, 2021.[3]  The Kudars appeal.

---

[2] There is no allegation that Mr. Morgan was involved in the movement of the marker.
[3] The district court held a hearing on the summary judgment motions on December 9, 2021.  The transcript of that hearing is not included in the appellate record.

## STANDARD OF REVIEW

[¶11] Our standard of review on motions for summary judgment is well established.

> We review decisions on summary judgment de novo, affording no deference to the district court's ruling. The party moving for summary judgment bears the burden of establishing a prima facie case and showing "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a). If the movant meets his initial burden, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. "A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties." We "evaluate the record 'from the viewpoint most favorable to the party opposing the motion for summary judgment, giving that party all the favorable inferences which may be drawn from the facts contained in affidavits, depositions, and other materials appearing in the record.'"
>
> We review summary judgment claims for adverse possession with "more exacting scrutiny" because they "are inherently fact-intensive," viewing them in the same light, using the same materials, and following the same legal standards as the court below.

*Woodward v. Valvoda*, 2021 WY 5, ¶¶ 12–13, 478 P.3d 1189, 1196 (Wyo. 2021) (citations omitted).

## ANALYSIS

[¶12] The Kudars claim that Mr. Morgan cannot show adverse possession because there is, at a minimum, a factual question as to whether Mr. Morgan's use of the property was permissive under the theory of neighborly accommodation.

[¶13] We start with a brief review of adverse possession and the shifting burdens of proof imposed by law. We then review Mr. Morgan's prima facie case of adverse possession and finally, the Kudars' assertion that Mr. Morgan's use was permissive. *White v. Wheeler*, 2017 WY 146, ¶ 16, 406 P.3d 1241, 1246 (Wyo. 2017).

## A. Adverse Possession Elements and Presumptions

[¶14] Adverse possession claims are not favored in the law, and "a presumption in favor of the record title holder" exists, unless and until the adverse claimant makes out his prima facie case. *Little Med. Creek Ranch, Inc. v. D'Elia*, 2019 WY 103, ¶ 18, 450 P.3d 222, 228 (Wyo. 2019) (quoting *Braunstein v. Robinson Fam. Ltd. P'ship LLP*, 2010 WY 26, ¶ 17, 226 P.3d 826, 833 (Wyo. 2010) (quoting *Hillard v. Marshall*, 888 P.2d 1255, 1261 (Wyo. 1995))).

[¶15] To establish adverse possession, the claimant "must show actual, open, notorious, exclusive and continuous possession of the disputed parcel which is hostile and under claim of right or color of title." *Graybill v. Lampman*, 2014 WY 100, ¶ 27, 332 P.3d 511, 519 (Wyo. 2014) (citing *Helm v. Clark*, 2010 WY 168, ¶ 8, 244 P.3d 1052, 1057 (Wyo. 2010)). This possession must continue for the statutory period of ten years set out in Wyo. Stat. Ann. § 1-3-103.

[¶16] "The test for adverse possession . . . imposes shifting burdens upon the parties." *Graybill*, ¶ 27, 332 P.3d at 519–20. Once a claimant makes the required prima facie showing, the presumption shifts to one in favor of the adverse possession claimant, *Little Med. Creek Ranch*, ¶ 18, 450 P.3d at 228, and "the burden shifts back to the record title holder who must produce evidence contrary to the presumption by showing that the claimant's possession was permissive." *Id.* (quoting *Braunstein*, ¶ 17, 226 P.3d at 833). "If the title holder can do that, then it becomes a question of weight and credibility to be determined by the trier of fact." *Little Med. Creek Ranch*, ¶ 18, 450 P.3d at 228 (quoting *Braunstein*, ¶ 17, 226 P.3d at 833); *Graybill*, ¶ 27, 332 P.3d at 520.

### 1. Mr. Morgan's Prima Facie Case of Adverse Possession

#### a. Actual and Exclusive Possession

[¶17] The requirement of actual possession does not depend on any particular act or use. Actual possession depends on the character of the land and the use which can reasonably be made of it. *Graybill*, ¶ 28, 332 P.3d at 520 (citing *Davis v. Chadwick*, 2002 WY 157, ¶ 11, 55 P.3d 1267, 1271 (Wyo. 2002)). The Kudars do not dispute that Mr. Morgan used the disputed property to build and expand his driveway, to erect a garage to store his boat and park his van, construct a greenhouse with an extended garden, and plant a line of trees. These are the type of actions that are consistent with those which would ordinarily be exercised by an owner in using land to the exclusion of others. *See Woodward*, ¶ 21, 478 P.3d at 1199 ("Such acts include, but are not limited to, erecting buildings on the land, planting vegetation, maintaining and improving the property, watering and mowing, and using the land for family gatherings." (citing *Graybill*, ¶¶ 30–32, 332 P.3d at 520–21; 3 Am. Jur. 2d *Adverse Possession* § 60 (database updated Nov. 2020))). There is no evidence

showing that anyone other than Mr. Morgan or his guests used or maintained the disputed property for over ten years. Mr. Morgan established actual and exclusive possession.

### b. Open, Notorious, and Continuous

[¶18] "The acts of dominion over land claimed to be adversely possessed must be so open and notorious as to put an ordinarily prudent owner on notice that the land is being used by another as his or her property." *Woodward*, ¶ 21, 478 P.3d at 1198–99 (quoting *Graybill*, ¶ 30, 332 P.3d at 520).

[¶19] The Kudars assert that the topography of the lots and Mr. Morgan's use weigh against open and notorious possession. They argue the property was steep and choked with bushes. The Kudars could not clearly see what, if any, use Mr. Morgan might be making of the disputed property. Consequently, Mr. Morgan's use could not be open or notorious. However, Mr. Kudar attested that, while he had not made many visits to that portion of the property, he did "go up there once a year to clean it up." The Kudars do not claim that they did not know about the improvements or that Mr. Morgan was in any way secretive about his activities. Mr. Morgan's use of the disputed parcel was "open and notorious in that anyone, including [the Kudars], could and should have seen it." *Graybill*, ¶ 32, 332 P.3d at 521.

### c. Hostile

[¶20] Possession or use that is hostile and under a claim of right is an assertion of ownership so adverse to, incompatible with, and in defiance of, the rights of the true owner "that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant *intends* to possess the property as his own, and that the owner should take some action to protect his title." *Galiher v. Johnson*, 2017 WY 31, ¶ 20, 391 P.3d 1101, 1106 (Wyo. 2017) (*Galiher I*) (citing *Graybill*, ¶ 36, 332 P.3d at 522). A claim of ownership may arise by mistake or by will. *Graybill*, ¶ 36, 332 P.3d at 522. Hostile use does not require an intent to acquire ownership of another's property "akin to lining up Spartans at Thermopylae." *Id.* It is simply "an assertion of ownership adverse to that of the record owner." *Id.* The claimant "must introduce evidence that such intent was objectively made manifest by his observable words or actions." *O'Hare v. Hulme*, 2020 WY 31, ¶ 19, 458 P.3d 1225, 1234 (Wyo. 2020) (quoting *Galiher I*, ¶ 21, 391 P.3d at 1106). Mr. Morgan established his use was hostile—an ordinary prudent owner was on notice that Mr. Morgan intended to, and did, possess the property as his own.

[¶21] The Kudars argue that a misplaced survey marker defeats Mr. Morgan's claim of hostile use. It is undisputed that neither the Kudars nor Mr. Morgan knew the exact boundary of their properties until 2016. The Kudars assert that their reliance on the incorrectly located survey marker distinguishes this situation from other mistaken boundary cases. *See Murdock v. Zier*, 2006 WY 80, ¶ 15, 137 P.3d 147, 151 (Wyo. 2006)

5

("[W]hen a man has occupied . . . ground, though under a mistaken belief as to the true boundary, for the period prescribed by law, openly, notoriously, [and] exclusively, . . . the presumption . . . , in the absence of explanatory circumstances[, is] that he occupied the land adversely . . . ."). The Kudars claim that prior to the discovery of the actual boundary in 2016, the Kudars were "essentially defrauded . . . by a third party," therefore "adverse possession . . . ran from the 2016 discovery of the survey error," defeating the ten year statutory time frame for adverse possession. They cite to *Maeberry v. Gayle*, 955 S.W.2d 875 (Tex. App. 1997). In *Maeberry*, an uncle asked his nephew to sign documents and told him the documents were legal papers relating to a guardianship when they were in reality a property deed. The nephew did not discover that he had a possible claim against his uncle until about ten years later. *Maeberry*, 955 S.W.2d at 877. The court held that the uncle's fraud prevented the running of the adverse possession under a theory of estoppel. *Id.* at 882. The present case contains no similar facts. The Kudars do not claim Mr. Morgan knew of the survey marker, or that he had any connection to its misplacement. Estoppel does not apply to Mr. Kudars' mistaken belief that Mr. Morgan's improvements were not on his property, and the mistaken boundary does not defeat Mr. Morgan's claim that his possession was hostile.

[¶22] Mr. Morgan established an undisputed prima facie claim of adverse possession, and the burden shifted to the Kudars to rebut his claim.

### 2. The Kudars' Rebuttal

[¶23] An "adverse possession claimant cannot succeed if his use of the property was permissive[.]" *O'Hare*, ¶ 20, 458 P.3d at 1234. "If the title holder can [prove] that, then it becomes a question of weight and credibility to be determined by the trier of fact." *Id.* (quoting *Braunstein*, ¶ 17, 226 P.3d at 833). The Kudars claim Mr. Morgan's use of the disputed property was under a grant of express permission and/or implied permission under the doctrine of neighborly accommodation.

#### a. Express Permission

[¶24] "To support a finding of permissive use, [the Kudars] must establish that he or she actually communicated, either explicitly or implicitly, *to the adverse claimant* that he or she was allowing the adverse claimant to use the disputed property at his or her sufferance." *Whitman v. Denzik*, 882 N.E.2d 260, 269 (Ind. Ct. App. 2008) (emphasis added). In this case, Mr. Kudar testified that Mr. Morgan did not ask for permission, nor did the Kudars grant permission for any of Mr. Morgan's activities prior to 2016. However, the Kudars assert express permission was given when Mr. Kudar told his son-in-law he didn't care if the spruce trees were on his land because they hid his view of Mr. Morgan's home. Mr. Kudar's conversation with his son-in-law does not equate to giving permission to Mr. Morgan. It "does not establish anything other than [Mr. Kudar's] state of mind, which is insufficient to demonstrate permissive use." *Whitman*, 882 N.E.2d at 269; *see also*

6

*Woodward*, ¶ 29, 478 P.3d at 1200 ("The record shows *no owner of the Valvoda property asked for or received permission* from anyone to use the window wells." (emphasis added)).

[¶25]  The Kudars also direct us to a conversation between Mr. Kudar and Mr. Morgan at some point after the trees were planted.  Mr. Kudar could not remember the date but remembered he had an encounter with Mr. Morgan over Mr. Morgan's "cutting stuff and throwing it down on my property."  When Mr. Morgan said, "Well, I also planted the trees," Mr. Kudar responded, "Well, if you want 'em, I'll cut 'em down and give 'em back to you."  The Kudars assert that, ironically, Mr. Kudar's failure to follow through on his offer to cut the trees was actually "express recognition of the permission granted by the Kudars for the trees."

[¶26]  Assuming this conversation occurred before the trees had been on the property for ten years, we cannot construe Mr. Kudar's threat to cut down the trees as permission for Mr. Morgan to use the property—express or otherwise.

## B.  Implied Permission

[¶27]  In *Little Med. Creek Ranch*, we reviewed the application of implied permission under the doctrine of neighborly accommodation as recognized by our precedent:

> In *Galiher v. Johnson*, 2018 WY 145, 432 P.3d 502 (Wyo. 2018) (*Galiher II*), we synthesized the rules regarding neighborly accommodation and elaborated on the distinction between neighbors and strangers under the rule.  We unequivocally acknowledged that "a neighborly accommodation should defeat a claim of adverse possession and 'to hold otherwise would be to adjudge that common neighborliness may only be indulged under penalty of encumbering one's property.'"  *Galiher II*, ¶ 20, 432 P.3d at 512 (quoting *Gray v. Fitzhugh*, 576 P.2d 88, 90 (Wyo. 1978)).  Then we explained that adverse possession disputes between neighbors are different than those involving strangers because of "the special relationship that often exists between neighbors."  *Id.* ¶ 21, 432 P.3d at 512 (citing James C. Smith, *Neighboring Property Owner*, § 6:1 (November 2018 update)).  Neighbors, unlike strangers, "normally have some sort of social relationship or contact, whether friendly or otherwise.  Generally, neighbors treat one another differently because of their status as neighbors."  *Id.*  Accordingly, "[a] 'neighborly accommodation' simply cannot be assumed—there must be

7

evidence of communication or joint activity which demonstrates such an accommodation." *Id.*

*Little Med. Creek Ranch*, ¶¶ 22–24, 450 P.3d at 229–30. As pointed out *supra* ¶ 24, Mr. Kudar testified that Mr. Morgan did not ask for permission nor did the Kudars grant permission for any of Mr. Morgan's activities prior to 2016. The Kudars now claim that Mr. Morgan's use of the disputed property was not hostile because they had permitted the use as a neighborly accommodation.

[¶28] First, the Kudars argue the evidence demonstrates that the use started out as impliedly permissive because "neither party really cared where the exact boundary was, . . ." and Mr. Kudar affirmed that neither party knew the exact boundary until 2016. An owner cannot demonstrate he granted permission to use land he does not know he owns. *See* 2 C.J.S. *Adverse Possession* § 81, at 581 (2013) ("Possession cannot be permissive, for purposes of an adverse possession claim, if neither the owner nor the possessor knows there is any encroachment." (citing *McNeil v. Ketchens*, 931 N.E.2d 224, 239 (Ill. App. Ct. 2010))); 68 Am. Jur. Proof of Facts 3d *Permissive Possession or Use of Land, As Defeating Claim of Adverse Possession or Prescriptive Easement*, at 239 (2002).

[¶29] It is well established that a landowner's passive acquiescence to another's use of his land is not evidence of permissive use. "Permission is an act of commission, not omission." *Woodward*, ¶ 29, 478 P.3d at 1200) (quoting *Galiher v. Johnson*, 2018 WY 145, ¶ 13, 432 P.3d 502, 510 (Wyo. 2018) (*Galiher II*) (quoting *Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 823 (Pa. Super. Ct. 1998))). *Id.* ("[A property owner] cannot sit passively, knowing of the adverse use and, then, claim to have given permission implicitly to the adverse possessor by his failure to object." (quoting *Galiher II*, ¶ 13, 432 P.3d at 510)). "A 'neighborly accommodation' simply cannot be assumed—there must be evidence of communication or joint activity which demonstrates such an accommodation." *Galiher II*, ¶ 21, 432 P.3d at 512. *See also Gulas v. Tirone*, 2009-Ohio-5076, ¶ 25, 919 N.E.2d 833, 839–40 (Ct. App.) (The court observed the property owner was correct that a use is not adverse if the landowner gave permission as a neighborly accommodation. On the other hand, the court said, "a use does not necessarily become permissive simply because the property owner does nothing to prevent it out of indifference, laziness, acquiescence, or 'neighborly accommodation.'" (quoting *Shell Oil Co. v. Deval Co.*, No. C-980783, 1999 WL 741814, at *4 (Ohio Ct. App. Sept. 24, 1999))).

[¶30] There is no evidence of communication between the Kudars and Mr. Morgan creating permissive use. No permission was asked for or given to Mr. Morgan to establish his driveway which was exclusively used by him. *See Dault v. Shaw*, 322 P.3d 84, 85 (Alaska 2013) (Presumption that the use of a private drive across the property of another is permissive does not apply where a drive was not originally established by the other property's owner for his or her own use.). No permission was given for him to construct a garage, greenhouse, garden, and deck for his exclusive use. No permission was given for

8

him to store building materials and equipment or to plant trees on the disputed property. There is no evidence of "joint activity" on the property such as a shared driveway or shared maintenance of the roads. There is no history of neighborly cooperation and accommodation attached to Mr. Morgan's use of the disputed property. There is no evidence that, prior to 2016, the Kudars objected to Mr. Morgan's use of the property other than to object to his disposal of "junk" on the Kudar property not subject to the adverse possession claim. As our case law makes clear, passive forbearance of a continuous, open, and exclusive adverse use for over ten years cannot be the basis for a claim of neighborly accommodation sufficient to defeat a claim of adverse possession. The Kudars' silence for over ten years, while Mr. Morgan used the disputed property as he wished, is not evidence of a neighborly accommodation.

[¶31] The Kudars failed to produce any evidence that Mr. Morgan's use of the property was permissive. They did not meet their burden to rebut Mr. Morgan's prima facia case of adverse possession.

## *CONCLUSION*

[¶32] Mr. Morgan established a prima facie claim of adverse possession which the Kudars failed to rebut. There is no genuine issue of material fact. The district court's grant of summary judgment to Mr. Morgan is affirmed.