# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 42

**APRIL TERM, A.D. 2024**

**April 19, 2024**

FORREST "TIMBER" TUCKNESS,

Appellant
(Plaintiff),

v.

THE TOWN OF MEETEETSE, a
Wyoming municipal corporation,

Appellee
(Defendant).

S-23-0261

*Appeal from the District Court of Park County*
*The Honorable Bill Simpson*

*Representing Appellant:*
> Cassie Craven, Longhorn Law Limited Liability Company, Cheyenne, Wyoming.

*Representing Appellee:*
> John D. Bowers, Bowers Law Firm, PC, Afton, Wyoming.

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Forrest "Timber" Tuckness brought a quiet title action claiming adverse possession against the Town of Meeteetse. After a bench trial, the district court ruled in favor of the Town. Mr. Tuckness appeals, and we affirm.

*ISSUE*

[¶2]    We rephrase the parties' framing of the issue as:

> 1. Whether the district court erred by failing to shift the burden of proof of permissive use to the Town of Meeteetse.

*FACTS*

[¶3]    Mr. Tuckness lived on a lot adjacent to Lot 5 in Meeteetse, Wyoming. He testified that in 1999, he began storing various items of personal property on Lot 5 without permission from its owner. He continued to use Lot 5 for at least 13 years until 2013, storing vehicles, trailers, horses, hay, fencing materials, firewood, and other items. He believed his actions were obvious to the public, and he testified that at no point did he receive permission to store his property on Lot 5.

[¶4]    Vision Quest Estates, a Wyoming corporation, purchased Lot 5 in 2003. Steve Christiansen, the company's president, became acquainted with Mr. Tuckness in 1998, and they became friends. Mr. Tuckness did handyman work for Mr. Christiansen and Vision Quest. Mr. Christiansen testified that sometime between 2005 and 2007, Mr. Tuckness asked permission to continue storing his property on Lot 5. According to Mr. Christiansen, he gave Mr. Tuckness such permission and also allowed Mr. Tuckness to put an electric fence on the property. Mr. Christiansen testified he never revoked the agreement. Mr. Tuckness denied requesting or receiving permission from Mr. Christiansen or Vision Quest to use Lot 5.

[¶5]    Mr. Christiansen also testified that in October of 2010, on behalf of Vision Quest, he offered to sell Lot 5 to Mr. Tuckness for $18,000. Mr. Christiansen stated that Mr. Tuckness showed interest in purchasing the property but the sale never materialized. Mr. Tuckness denied receiving this offer and claimed he would have accepted the offer had he known of it.

[¶6]    In October of 2013, Vision Quest sold Lot 5 to the Town of Meeteetse by warranty deed. Before this sale, Mr. Tuckness gave notice to the Town that he claimed Lot 5 by adverse possession. The Town went forward with the purchase and erected a fence and

gate on the lot. When Mr. Tuckness did not remove his property from Lot 5, the Town began a forcible entry and detainer action in circuit court. Mr. Tuckness did not raise his claim of adverse possession in response to the Town's petition. The circuit court entered judgment in the Town's favor, and the sheriff removed Mr. Tuckness's property from Lot 5 after Mr. Tuckness failed to do so in the time allotted by the court.

[¶7]    Mr. Tuckness filed a complaint against the Town in district court, claiming he was the owner of Lot 5 by adverse possession and seeking a declaratory judgment for quiet title. After a bench trial, the court issued its Findings of Fact, Conclusions of Law and Order Dismissing Case with Prejudice, finding "Mr. Tuckness has not met his burden of proof for adverse possession."

[¶8]    The district court addressed the elements of adverse possession: a claimant must show open, notorious, exclusive, and continuous possession of the disputed parcel in a manner that is hostile and under a claim of right or title, all for a period of ten years. The court concluded that Mr. Tuckness's use of Lot 5 was actual, exclusive,[1] open and notorious, and continuous from 1999 to 2013. The court concluded that the notice Mr. Tuckness provided to the record owners of Lot 5 by storing his property thereon was sufficient to advise them that Mr. Tuckness may have claimed the property as his own.

[¶9]    The district court found that the determinative question was "whether Vision Quest, through Mr. Christiansen, interrupted Mr. Tuckness's adverse use by giving him permission to use Lot 5 at some time between 2005 and 2007," as "[p]ermission to use the lot would undermine the 'hostile' element of the adverse [possession] claim." However, Mr. Tuckness's and Mr. Christiansen's testimony conflicted regarding whether Mr. Tuckness had permission. The court weighed the credibility of the two witnesses.

> The [c]ourt finds Mr. Christiansen's testimony credible. Mr. Christiansen and Mr. Tuckness knew each other. They were on friendly terms. Mr. Tuckness had done work for Mr. Christiansen, or Vision Quest, in exchange for rent.

The court then found Mr. Tuckness to be, perhaps, slightly less credible:

> The [c]ourt does not find that Mr. Tuckness's testimony lacked credibility. Mr. Tuckness testified in a

---

[1] The district court found "Mr. Tuckness did not prevent Vision Quest or the Town of Meeteetse from using Lot 5, and Mr. Tuckness did not file a complaint, petition, or other formal document claiming he had an interest in Lot 5 during Vision Quest's ownership." However, in concluding Mr. Tuckness's use of Lot 5 was exclusive, the court clarified that "[n]o other person attempted to use any part of Lot 5 when Mr. Tuckness occupied the lot and Mr. Tuckness used the lot for his own benefit."

2

straight-forward manner throughout the trial without any particular indicia of giving false testimony.

It then concluded:

> Nonetheless, the [c]ourt finds both witnesses equally credible.
>
> The [c]ourt finds the testimony of the two witnesses to be in equipoise, neither witness more credible than the other.

After weighing the credibility of the witnesses, the court reasoned that when evidence is in "equipoise," the party with the burden of proof must fail.

[¶10]   The district court concluded that Mr. Tuckness "failed to meet his burden of proof by a preponderance of the evidence on [his] claim for adverse possession" and that he "failed to show that his use was hostile without permission."

### *STANDARD OF REVIEW*

[¶11]   Our standard of review following a bench trial is well-established:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed de novo.

3

*Little Med. Creek Ranch, Inc. v. d'Elia* (*Little Med. Creek Ranch II*), 2023 WY 30, ¶ 16, 527 P.3d 856, 863 (Wyo. 2023) (quoting *Lyman v. Childs*, 2023 WY 16, ¶ 10, 524 P.3d 744, 751 (Wyo. 2023)).

## *DISCUSSION*

[¶12]  A party claiming real property by adverse possession "must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title." *Little Med. Creek Ranch II*, 2023 WY 30, ¶ 18, 527 P.3d at 863. All of the elements must be established over a ten-year period. *Lyman*, 2023 WY 16, ¶ 12, 524 P.3d at 751; *see also* Wyo. Stat. Ann. § 1-3-103 (2023).

[¶13]  Adverse possession claims are subject to shifting presumptions and burdens of proof. *Little Med. Creek Ranch II*, 2023 WY 30, ¶ 19, 527 P.3d at 863. "A presumption of ownership first rests with the record title holder unless and until the adverse claimant makes out his prima facie case of adverse possession." *Id.* (quoting *Lyman*, 2023 WY 16, ¶ 12, 524 P.3d at 751). If the claimant makes a prima facie showing on each element, the presumption becomes one in favor of the claimant, and the burden shifts to the record owner to show that the claimant's use of the property was permissive. *Little Med. Creek Ranch II*, 2023 WY 30, ¶ 19, 527 P.3d at 864. "If the title holder can do that, then it becomes a question of weight and credibility to be determined by the trier of fact." *Kudar v. Morgan*, 2022 WY 159, ¶ 16, 521 P.3d 988, 933 (Wyo. 2022) (quoting *Little Med. Creek Ranch, Inc. v. d'Elia* (*Little Med. Creek Ranch I*), 2019 WY 103, ¶ 18, 450 P.3d 222, 228 (Wyo. 2019)).

[¶14]  Mr. Tuckness argues the district court misapplied the shifting burden of proof. He understandably relies on the district court's statement that "Mr. Tuckness's testimony was not sufficiently rebutted and has made a prima facie case," and he contends that shifted the burden to the Town to prove that his use of Lot 5 was permissive by a preponderance of the evidence. But the district court went on to find that

> Mr. Tuckness carries the burden of proof on all elements of his action by a preponderance of the evidence. When a factfinder finds 'from all the evidence that two equally reasonable inferences or conclusions may be drawn, one favoring the plaintiff and the other the defendant, then the plaintiff has failed to substantiate his case by a preponderance of the evidence and must fail.' *Northwest States Utilities Co. v. Ashton*, 65 P.2d 235, 238 (1937). Where evidence is in 'equipoise,' 'under Wyoming law the party with the burden of proof must fail.' *Mahaffey v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2011 WY 45, ¶ 31, 249 P.3d 234, 245 (Wyo. 2011); *Little v. State ex rel. Dep't of*

[¶15]  Our standard of review resolves this case. We are required to "assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it." *Little Med. Creek Ranch II*, 2023 WY 30, ¶ 16, 527 P.3d at 863 (quoting *Lyman*, 2023 WY 16, ¶ 10, 524 P.3d at 751).

[¶16]  The district court found Mr. Christiansen was credible, and his account of giving permission to Mr. Tuckness to use Lot 5 was reasonably believable. It concluded

> [i]t was reasonable to assume under [the] circumstances that at some point Mr. Christiansen would have a conversation with Mr. Tuckness about his use of Lot 5 and tell Mr. Tuckness that it was fine with him that Mr. Tuckness use the lot and that Mr. Tuckness had Mr. Christiansen's permission to do so.

Further, the district court acknowledged evidence putting in doubt Mr. Tuckness's credibility. In both its initial assessment of Mr. Tuckness's credibility and its conclusion, it pointed out Mr. Tuckness's failure to raise adverse possession in the Town's forcible entry and detainer case and his statement that he would have purchased Lot 5 for $18,000 had he received an offer,[2] "bringing into question his assertion that he already owned the lot." The court questioned Mr. Tuckness's credibility notwithstanding its statements to the contrary.

[¶17]  Giving the Town, as the prevailing party, "every reasonable inference that can fairly and reasonably be drawn" from the evidence and the district court's analysis, we cannot find that it was error for the court to conclude that Mr. Tuckness's possession of Lot 5 was not sufficiently hostile to establish adverse possession. *Little Med. Creek Ranch II*, 2023 WY 30, ¶ 16, 527 P.3d at 863 (quoting *Lyman*, 2023 WY 16, ¶ 10, 524 P.3d at 751).

---

[2] Mr. Tuckness asserts that his hypothetical willingness to purchase the property from Mr. Christiansen is irrelevant. He argues that because an adverse possession claimant must show hostile possession by objective and manifest intent rather than subjective intent, *Lyman*, 2023 WY 16, ¶ 19, 524 P.3d at 753, a subjective and hypothetical willingness to purchase property cannot defeat Mr. Tuckness's adverse possession claim. Even putting aside our rejection of such reasoning, *Galiher v. Johnson*, 2017 WY 31, ¶¶ 23-26, 391 P.3d 1101, 1107 (Wyo. 2017), the district court could, as it did here, consider this statement with regard to Mr. Tuckness's credibility. *See King v. State*, 2023 WY 36, ¶ 13, 527 P.3d 1229, 1237 (Wyo. 2023) (inconsistencies in a witness's testimony are to be resolved by the fact finder).

## CONCLUSION

[¶18]  The district court did not err in concluding that Mr. Tuckness's adverse possession claim must fail because his use of Lot 5 was not hostile. The district court found Mr. Christiansen credible and credited his account of granting Mr. Tuckness permission to use Lot 5. We affirm the district court's decision in favor of the Town and dismissing Mr. Tuckness's adverse possession claim with prejudice.