# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 69

APRIL TERM, A.D. 2024

June 21, 2024

MICHAEL A. SELLERS and MICHELLE R.
SELLERS, husband and wife,

Appellants
(Defendants),

v.                                                              S-23-0230

PHYLLIS M. CLAUDSON; WILLARD E.
POND; PAMELA IRENE POND and
PEGGY LOU POND PAUL,

Appellees
(Plaintiffs).

*Appeal from the District Court of Park County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellant:*

Marianne K. Shanor, Sean M. Larson, and Jacob Beckett of Hathaway & Kunz, LLP, Cheyenne, Wyoming. Argument by Mr. Larson.

*Representing Appellee:*

Larry B. Jones and Colin M. Simpson of Burg Simpson Eldredge Hersh and Jardine, P.C., Cody, Wyoming. Argument by Mr. Jones.

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]  Appellants, Michael and Michelle Sellers (collectively "Sellers"), purchased 12 acres of real property located next to a 4-acre parcel of land owned by Appellees, Phyllis Claudson, William Pond, Pamela Pond, and Peggy Lou Pond Paul (collectively "Ponds"). During the purchase of the property, the Sellers learned a portion of the 12 acres (Subject Property) was located on the Ponds' side of a boundary fence.  The Ponds filed a complaint to quiet title to the Subject Property based on adverse possession.  On cross-motions for summary judgment, the district court found the Ponds adversely possessed the Subject Property.  The Sellers appealed, and we affirm.

## ISSUES

[¶2]  We rephrase the issues as follows:

> I.    Did the Ponds make a prima facie case for adverse possession?
>
> II.   Did the Sellers rebut the claim of adverse possession by showing permissive use of the Subject Property through neighborly accommodation?
>
> III.  Did the district court err when it found the Ponds adversely possessed the entirety of the Subject Property?

## FACTS

[¶3]  This matter involves a real property dispute in Park County, Wyoming.  At the center of the dispute is a wedge of land located between two adjoining parcels of property: one owned by the Sellers and one owned by the Ponds.  The Subject Property is the triangular wedge of property identified in the cross-hatched area in the image below between the two parcels of property.

1



[¶4]　On August 16, 1961, the Ponds' predecessors-in-interest, Dean Pond, Sr. and Irene Pond[1], purchased 16 acres in Park County, Wyoming. The following month, Dean and Irene entered into an agreement to transfer 12 of those 16 acres to Frederick Schlack. Dean and Irene kept the remaining 4 acres. In 1992, the Ponds received the 4 acres of property through an executor's deed. In 1997, Frederick Schlack's 12 acres of property was transferred to his son F. Randall Schlack.

---

[1] We refer to individuals by their first names throughout the opinion to avoid any confusion. The Appellants are referred to as the Sellers and the Appellees are referred to as the Ponds.

[¶5]    In 1961–1962, Dean and Frederick built a fence around the Ponds property, separating the two neighboring properties.  They built the fence along what they believed was the boundary line based on a survey conducted in 1961 or 1962.

[¶6]    After the fence was built, the Ponds used a shed already located on the Subject Property to store horse feed, horse tack, a rototiller, lawn chairs, and picnic tables.  The Ponds also built additional structures on the Subject Property, including an outhouse and a tent frame.  The Ponds used the tent frame for a hunting camp and as a place to eat by placing a canvas over the frame.  The Ponds took several photos as they were building the tent frame, some of which depicted Frederick and Dean standing by the tent frame, indicating "Mr. Schlack could have possibly helped build [the structures]."  Approximately twenty years later, in the 1980s, the Ponds enclosed the tent frame, using old barn wood and other materials, and then in the 2000s they installed wood flooring and insulation.  Also, in the late 1970s and early 1980s, the Ponds rebuilt the outhouse and constructed an additional shed on the Subject Property.

[¶7]    The Ponds used the Subject Property and structures for family gatherings, picnics, a hunting camp, and horseback riding.  They would allow their friends to park their campers and stay on the Subject Property.  At one point, Dean and Irene parked a mobile home on the Subject Property, and one family member lived there for approximately nine years.  Around the time the mobile home was parked on the Subject Property, Dean and Irene had a well drilled on their property, and water from the well was used to maintain and care for the Subject Property.  The Ponds maintained the Subject Property, including planting grass seed and repairing the fence when necessary.  Through the years, the Ponds disposed of items on the Subject Property, including a refrigerator, a pile of bed frames, old hoses, mattresses, and carpet.  The Ponds removed these items in May 2023.

[¶8]    In 2008, Randall had a new survey conducted with the intent to place his 12-acre property on the market.  The new survey revealed the original 1960s survey contained errors, and incorrectly placed the Subject Property on the Ponds' side of the boundary fence.  Randall listed his 12-acre parcel for sale, and the listing noted the "[b]oundary line issue is being addressed . . . [s]urvey to be re-done, acreage is estimate."  He further noted on the listing that the sale was contingent upon a boundary line adjustment.  After approximately 13 years of Randall's property being on and off the market, he sold his property to the Sellers in January 2021.  Randall sold his property without resolving the boundary dispute, and the Sellers purchased and closed on Randall's property cognizant of the ownership dispute over the Subject Property.

[¶9]    The Ponds filed their complaint against the Sellers on July 28, 2022.  They claimed title to the Subject Property through adverse possession and sought to quiet title to the Subject Property.  The Sellers counterclaimed and argued they are the record title owners, and Frederick granted the Ponds permission to use the Subject Property.  After completing discovery, the Ponds and the Sellers filed competing motions for summary judgment.  The

3

district court granted summary judgment in favor of the Ponds. The Sellers timely appealed.

## STANDARD OF REVIEW

[¶10] Our standard of review of a district court's order granting summary judgment on adverse possession claims is well established:

> We review decisions on summary judgment de novo, affording no deference to the district court's ruling. The party moving for summary judgment bears the burden of establishing a prima facie case and showing "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a). If the movant meets his initial burden, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. We evaluate the record from the viewpoint most favorable to the party opposing the motion for summary judgment, giving that party all the favorable inferences which may be drawn from the facts contained in affidavits, depositions, and other materials appearing in the record.
>
> We review summary judgment claims for adverse possession with more exacting scrutiny because they are inherently fact-intensive, viewing them in the same light, using the same materials, and following the same legal standards as the court below.

*Kudar v. Morgan*, 2022 WY 159, ¶ 11, 521 P.3d 988, 992 (Wyo. 2022) (citation and internal quotation marks omitted).

## DISCUSSION

[¶11] The district court found the Ponds adversely possessed the Subject Property as early as 1972 and quieted title in their favor. On appeal, the Sellers challenge the district court's finding that the Ponds met their prima facie case of adverse possession. They claim, at a minimum, there is a factual question as to whether the Ponds' use of the Subject Property was permissive under the theory of neighborly accommodation.

4

[¶12]   We begin our discussion with a brief review of the elements of adverse possession and the shifting burdens of proof imposed by law.  We then examine whether the Ponds established a prima facie case of adverse possession and discuss the Sellers' assertion of permissive use. Finally, we discuss the Sellers' contention the district court erred when it quieted title to the entirety of the Subject Property.

## I. *Adverse Possession Elements and Presumptions*

[¶13]   "Adverse possession claims are not favored in the law[.]" *Kudar*, 2022 WY 159, ¶ 14, 521 P.3d at 993.  "[A] presumption in favor of the record title holder exists, unless and until the adverse claimant makes out his prima facie case." *Id.* (quoting *Little Med. Creek Ranch, Inc. v. D'Elia* (*Little Med. Creek Ranch I*), 2019 WY 103, ¶ 18, 450 P.3d 222, 228 (Wyo. 2019)).  "To establish adverse possession of real property, 'the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title.'" *Little Med. Creek Ranch, Inc. v. d'Elia Tr. of d'Elia Fam. Tr.* (*Little Med Creek Ranch II*), 2023 WY 30, ¶ 18, 527 P.3d 856, 863 (Wyo. 2023) (quoting *Clay v. Mountain Valley Min. Ltd. P'ship*, 2015 WY 84, ¶ 21, 351 P.3d 961, 968 (Wyo. 2015)).  This possession must continue for the statutory period of ten years as established under Wyoming Statute § 1-3-103 (LexisNexis 2023).

[¶14]   An adverse possession claim is subject to shifting presumptions and burdens of proof. *Tuckness v. Town of Meeteetse*, 2024 WY 42, ¶ 13, 546 P.3d 1091, 1094 (Wyo. 2024).  "A presumption of ownership first rests with the record title holder unless and until the adverse claimant makes out his prima facie case of adverse possession." *Id.* (quoting *Little Med. Creek Ranch II*, 2023 WY 30, ¶ 19, 527 P.3d at 863–64.  Once a claimant makes the required prima facie showing on each element, the presumption shifts to one in favor of the adverse possession claimant, and the burden shifts to the record title holder to produce evidence showing the claimant's use of the property was permissive. *Id.*; *Kudar*, 2022 WY 159, ¶ 16, 521 P.3d at 993.  The Sellers can establish permissive use and defeat the Ponds' claim of adverse possession by showing neighborly accommodation. *See Kudar* at ¶¶ 27–31, 521 P.3d at 995–96; *Galiher v. Johnson (Galiher II)*, 2018 WY 145, ¶ 20, 432 P.3d 502, 512 (Wyo. 2018).  If the Sellers make a showing of permissive use through neighborly accommodation, then whether the Ponds adversely possessed the Subject Property "becomes a question of weight and credibility to be determined by the trier of fact." *Tuckness*, ¶ 13, 546 P.3d at 1094 (quoting *Kudar*, ¶ 16, 521 P.3d at 993).

### A. Ponds' Prima Facie Case for Adverse Possession

#### 1. *Actual Possession*

[¶15]   "No particular act is required to establish actual possession; whether actual possession occurred depends on the nature and use of the land." *Lyman v. Childs*, 2023

WY 16, ¶ 14, 524 P.3d 744, 752 (Wyo. 2023) (quoting *Graybill v. Lampman*, 2014 WY 100, ¶¶ 28–29, 332 P.3d 511, 520 (Wyo. 2014)) (internal quotation marks omitted). In approximately 1961 or 1962, the Ponds and Frederick built a fence separating their two properties along an incorrect boundary line listed in a survey. This placed the Subject Property on the Ponds' side of the fence. After the fence was built, the Ponds built an outhouse and tent frame on the Subject Property. Almost twenty years later, the Ponds added siding and a roof to the tent frame, rebuilt the outhouse, and built a shed on the Subject Property. The Ponds used the Subject Property over the years for their own personal benefit by building structures on the land and parking a mobile home there. The Ponds used the Subject Property for a hunting camp, picnics, hiking, family gatherings, and dumping disposed items such as an old refrigerator, a pile of bedframes and mattresses, old hoses, and rotted fence posts. They also allowed friends to stay on and use the Subject Property. The Ponds maintained the Subject Property by clearing worn out items, planting grass seed and a garden, and irrigating the land with water from a well they dug on their property. The Ponds' use of the Subject Property establishes a prima facie case of actual possession. *Lyman*, ¶ 14, 524 P.3d at 752 (finding routinely fishing and hunting on the disputed parcels, leasing the land, logging, grazing livestock, and enclosing the disputed parcels in a fence established actual possession); *Graybill*, 2014 WY 100, ¶¶ 28–29, 332 P.3d at 520 (finding that maintaining and watering the disputed area, cutting hay, using it for family gatherings, and parking cars on the disputed area in a rural residential area was sufficient to show actual possession).

## 2. *Open and Notorious*

[¶16] The Ponds' acts of dominion over the Subject Property "must be so open and notorious as to put an ordinarily prudent owner on notice that the land is being used by another as his or her property." *Kudar*, 2022 WY 159, ¶ 18, 521 P.3d at 993 (quoting *Woodward v. Valvoda*, 2021 WY 5, ¶ 21, 478 P.3d 1189, 1198 (Wyo. 2021)). The Ponds must "demonstrate open and overt control or use of the property consistent with the type of land in dispute." *Lyman*, 2023 WY 16, ¶ 15, 524 P.3d at 752. The Sellers argue the Ponds' evidence of joint gatherings, which included Frederick, and the parties' joint building of the fence does not satisfy the element of open and notorious because it did not put a reasonably prudent neighbor on notice the land was being used by another. Enclosing the land within a fence, occupying the land, erecting buildings on the land, planting vegetation, maintaining and improving the property, and using the land for family gatherings can satisfy the element of open and notorious. *Id.*; *Woodward*, ¶ 21, 478 P.3d at 1199. Although the parties built the fence on a mistaken boundary line, the Ponds constructed buildings, stored items, disposed of trash, had joint gatherings, used the property for hunting and allowed others to stay on the Subject Property. The Ponds' use of the Subject Property sufficiently put Frederick on notice the Ponds used the Subject Property as their own, and this evidence meets their burden of establishing the open and notorious elements.

6

### 3. *Exclusive Use*

[¶17]  To show exclusive possession, the Ponds must show "dominion over the disputed parcel and an appropriation of it to their own use and benefit." *Graybill*, ¶ 33, 332 P.3d at 521.  For the purposes of adverse possession, this "does not mean absolutely exclusive, but only such use as would be expected of an owner under the circumstances." *Id.*  The Sellers argue the Ponds did not meet their burden of proving exclusive possession because Frederick helped the Ponds build the fence and some of the buildings.  "A record owner's use or access of disputed property does not undermine exclusivity when the use or access is 'nothing more than any neighboring land owner might do.'" *Woodward*, 2021 WY 5, ¶ 23, 478 P.3d at 1199 (quoting *Cook v. Eddy*, 2008 WY 111, ¶ 25, 193 P.3d 705, 713 (Wyo. 2008)).

[¶18]  The Ponds met their burden of establishing exclusive possession.  The Ponds and their predecessors used and possessed the Subject Property in a manner that would be expected of an owner using the Subject Property to the exclusion of others.  The Ponds and their predecessors believed the Subject Property was part of their property.  They used it exclusively for their benefit and the benefit of their property, including building structures and allowing others to live and stay on the Subject Property.  They continued to use and maintain the Subject Property exclusively for their benefit even after the 2008 survey revealed the mistaken boundary fence.  Although the Sellers offer evidence Frederick helped build the mistaken boundary fence and some of the buildings on the Subject Property, this is nothing more than what any neighboring landowner might do. *See Cook*, 2008 WY 111, ¶ 25, 193 P.3d at 713.  The Sellers offered no evidence indicating Frederick's presence on the Subject Property was pursuant to an assertion of ownership or that he conducted any activities on the Subject Property other than helping the Ponds.  Given the evidence in this case, the Ponds established a prima facie case of exclusive possession. *See, e.g.*, *Graybill*, 2014 WY 100, ¶ 34, 332 P.3d at 521 (finding exclusive possession when the record title holder built a fence enclosing the disputed property on the adverse possessor's side of the fence, and the adverse possessor mowed and maintained the subject property as their own); *Cook*, ¶ 25, 193 P.3d at 713 (finding the record title owners' presence on the property for fence repair did not defeat exclusivity).

### 4. *Hostile and Under Claim of Right/Color of Title*

[¶19]  Hostile possession or use under a claim of right is an assertion of ownership, so adverse to, incompatible with, and in defiance of, the rights of the record owner "that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant intends to possess the property as his own, and that the owner should take some action to protect his title." *Kudar*, 2022 WY 159, ¶¶ 20–21, 521 P.3d at 994.  An assertion of ownership "may arise by mistake or by will." *Id.* ("[A] mistaken boundary does not defeat [an adverse possessor's] claim that his possession was hostile.").  Hostile possession requires the adverse possessor to assert ownership over the disputed property

7

through "clear notice to the legal owner that his or her ownership is in jeopardy, so that action to protect title can be taken within the statutorily prescribed period." *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522. A claimant establishes a prima facie case of hostile possession under a claim of right by introducing objective evidence the adverse possessor manifested their intent to possess the disputed property through observable words or actions. *Woodward*, 2021 WY 5, ¶ 27, 478 P.3d at 1200.

[¶20] Here, the Ponds and their predecessors objectively manifested their intent to possess the Subject Property. The evidence clearly indicates the Ponds and Frederick enclosed the Subject Property on the Ponds' side of the fence in 1961–1962 due to a survey error. The Ponds and their predecessors believed the Subject Property was theirs and treated it as such from the time the parties built the boundary fence. There is no evidence in the record Frederick gave the Ponds or their predecessors permission to use the Subject Property, nor is there evidence Frederick used the Subject Property to benefit his property. Instead, the evidence shows, the Ponds built buildings and continuously used the Subject Property from the time the parties built the boundary fence, including re-building the outhouse approximately 20 years later. The Ponds sufficiently raised the flag of hostile possession and placed the record title owner on notice of their claim to the Subject Property. *See, e.g.*, *Kudar*, 2022 WY 159, ¶ 21, 521 P.3d at 994 (finding hostile possession when there was a mistaken boundary line and a mistaken belief the improvements were made on the adverse possessor's property); *Woodward*, 2021 WY 5, ¶¶ 29–30, 478 P.3d at 1200–01 (finding the claimant met their burden establishing hostile use when there was a lack of evidence regarding the claimant receiving permission to encroach on property); *Graybill*, 2014 WY 100, ¶¶ 36–37, 332 P.3d at 522 (finding hostile possession when the evidence indicated the adverse possessor believed the disputed property was theirs, treated it as such, and there was no evidence of permission).

### 5. *Continuous Possession for the Statutory Period*

[¶21] An adverse possessor acquires title by "the concurrent and continuous existence of each element of adverse possession for the required ten year period." *Graybill*, 2014 WY 100, ¶ 38, 332 P.3d at 522. For purposes of adverse possession, "continuous" equates to possession of the disputed property that is "uninterrupted or maintained without break or interlude." *Woodward*, 2021 WY 5, ¶ 25, 478 P.3d at 1199. The record indicates the Ponds continuously possessed the Subject Property pursuant to the adverse possession elements from the time the parties built the boundary fence in approximately 1962, thereby vesting their claim to the Subject Property in the 1970s.

## II. *Sellers' Case for Permissive Use Through Neighborly Accommodation*

> [W]hen a [claimant] has occupied a piece of ground, though under a mistaken belief as to the true boundary, for the period prescribed by law, openly, notoriously, exclusively, and in a

8

manner plainly indicating that he acted as owner thereof, the presumption should be, in the absence of explanatory circumstances showing the contrary, that he occupied the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right.

*Murdock v. Zier*, 2006 WY 80, ¶ 15, 137 P.3d 147, 151 (Wyo. 2006) (quoting *City of Rock Springs v. Sturm*, 273 P. 908, 915–16 (Wyo. 1929)).

[¶22]   The Sellers claim Frederick permitted the Ponds and their predecessors to use the Subject Property through neighborly accommodation, and the Ponds cannot acquire title to the Subject Property through adverse possession.  Neighborly accommodation defeats a claim of adverse possession because "when a landowner allows a neighbor to use his land, that use should be deemed permissive." *Galiher v. Johnson* (*Galiher I*), 2017 WY 31, ¶ 22, 391 P.3d 1101, 1106 (Wyo. 2017); *Kudar*, 2022 WY 159, ¶ 27, 521 P.3d at 995. Neighbors, unlike strangers, normally have some sort of social relationship or contact, whether friendly or otherwise, and will often "allow slight intrusions onto their land by their neighbors in order to promote good will and avoid bad feelings and confrontations." *Galiher I*, ¶ 22, 391 P.3d at 1106; *Kudar*, 2022 WY 159, ¶ 27, 521 P.3d at 995.  "A 'neighborly accommodation' simply cannot be assumed—there must be evidence of communication or joint activity which demonstrates such an accommodation." *Kudar*, ¶ 29, 521 P.3d at 996 (quoting *Galiher II*, 2018 WY 145, ¶ 21, 432 P.3d at 512).

[¶23]   The Sellers claim they established a question of fact as to whether Frederick accommodated the Ponds' use of the Subject Property because the evidence demonstrates Frederick helped the Ponds and their predecessors build the fence and the buildings in 1961–1962.  The Sellers contend these joint acts demonstrate Frederick implicitly gave the Ponds permission to use the Subject Property.

[¶24]   "It is well established that a landowner's passive acquiescence to another's use of his land is not evidence of permissive use." *Kudar*, 2022 WY 159, ¶ 29, 521 P.3d at 996. Permission requires acts of commission, not omission. *Id.* (quoting *Woodward*, 2021 WY 5, ¶ 29, 478 P.3d at 1200).  A record title holder "cannot sit passively, knowing of the adverse use and, then, claim to have given permission implicitly to the adverse possessor by his failure to object." *Woodward*, ¶ 29, 478 P.3d at 1200.  The Sellers admit in their statement of undisputed material facts Frederick "assisted the Ponds in building the fence" "us[ing] a prior survey [that] was off" to place the fence along the southern border of the Pond property.  Further, the Sellers are unable to demonstrate Frederick gave the Ponds permission to use the Subject Property when the evidence demonstrates he was unaware he owned the property. *See Kudar*, 2022 WY 159, ¶ 28, 521 P.3d at 996.  The only evidence the Sellers offer to establish Frederick knew about his ownership of the Subject Property is the deed to the property.  We acknowledge the record contains an unattested statement

9

in the Ponds' responses to requests for admission stating the Ponds "told Frederick Schlack [they] were not moving the fence in roughly 1995[,]" a statement well past the time the ten-year period had run. While this statement may support a finding Frederick could have known the fence was placed on a mistaken boundary and the Subject Property belonged to him, the Sellers presented no evidence expanding on this statement to show permissive use or neighborly accommodation.

[¶25] The Sellers presented no evidence of communication between the Ponds and Frederick to establish the Ponds asked for or received permission to build the tent frame or outhouse, or that he allowed the Ponds to use the Subject Property for their own benefit. The evidence the Sellers rely on establishes the Ponds believed the Subject Property was theirs since approximately 1961, and the Ponds and Frederick built the fence "where they knew the property line to be." It further establishes the Ponds invited friends to use the Subject Property, including allowing their friends to bring their horses and campers onto the Subject Property to stay.

[¶26] "As our case law makes clear, passive forbearance of a continuous, open, and exclusive adverse use for over ten years cannot be the basis for a claim of neighborly accommodation sufficient to defeat a claim of adverse possession." *Kudar*, 2022 WY 159, ¶ 30, 521 P.3d at 996. The Sellers failed to produce any evidence the Ponds's use of the Subject Property was permissive. They did not meet their burden of rebutting the Ponds' prima facia case of adverse possession and the presumption the Ponds occupied the land adversely under a claim of right.

### III. *Quieting title to the Entirety of the Subject Property*

[¶27] For their third issue, the Sellers argue the district court erred by granting summary judgment and quieting title in favor of the Ponds to the entirety of the Subject Property. The Sellers claim the Ponds could have only adversely possessed the areas of the Subject Property containing the buildings.

[¶28] The Sellers failed to cite to anywhere in the record where they raised this issue to the district court. "Our precedent is clear that an argument may not be made for the first time on appeal." *Davidson-Eaton v. Iversen*, 2022 WY 135, ¶ 62, 519 P.3d 626, 645 (Wyo. 2022). "It is not the duty of this Court to scour the record to find confirmation of party assertions; it is the duty of the proponent to support their position with proper citation to the record." *Black v. William Insulation Co.*, 2006 WY 106, ¶ 21 n.4, 141 P.3d 123, 131–32 n.4 (Wyo. 2006); W.R.A.P. 7.01(f) (LexisNexis 2023). Additionally, "[t]his Court may decline to consider claims not supported by cogent argument and pertinent legal authority." *Tozzi v. Moffett*, 2018 WY 133, ¶ 26, 430 P.3d 754, 762 (Wyo. 2018). In their brief, the Sellers do not support their contentions with any citations to relevant authority or provide cogent analysis. Instead, they simply assert the district court erred by awarding the entirety

of the Subject Property to the Sellers.  We decline to consider the Sellers third issue any further.

## **CONCLUSION**

[¶29] The Ponds made a prima facie showing they adversely possessed the Subject Property, and the Sellers failed to rebut the prima facie showing with evidence establishing permissive use.  The Sellers failed to show a disputed issue of material fact, and the district court properly granted summary judgment in the Ponds' favor.  We affirm.